[No. 29145. Department Two. October 25, 1943.]

VIKING AUTOMATIC SPRINKLER COMPANY, *Respondent*, v.
PACIFIC INDEMNITY COMPANY, *Appellant*.[1]

[1] Reported in 142 P. (2d) 394.

*Skeel, McKelvy, Henke, Evenson & Uhlmann,* for appellant.

*Smith, Matthews & Wilkerson* and *J. Speed Smith* and *Henry Elliott,* for respondent.

BLAKE, J.—This is an action upon a liability insurance policy which, by endorsement, contained the following provision:

"The Company agrees to insure the Assured against loss by reason of the liability imposed by law upon the Assured for damages (including damage resulting from loss of use of property damaged or destroyed), on account of damage to or destruction of property of any description caused solely and directly as a result of an accident occurring during the effective period of this endorsement by reason of and during the progress of the business operations of the Assured, . . ."

A major part of the "business operations of the Assured" consists in the installation of automatic sprinkler systems in buildings.

During the effective period of the policy, plaintiff undertook to install a sprinkler system in a dry kiln erected by the Horton Cedar Manufacturing Company, Ltd., as a part of its plant near Victoria, British Columbia. In making the installation, it was necessary to shut off the water in order to connect up the new system with the one already installed serving other parts of the plant.

At the end of the day's work on March 11, 1941, the workman, having completed one unit of the new system, turned the water on. He discovered a leak in an elbow which he had installed that day. He shut the water off again, and, having no other elbow nor plug to substitute for the broken elbow, he left the premises. With the water shut off, the sprinkler system was, of course, useless. That evening, at about eight o'clock, a fire started in the plant, causing some twenty thousand dollars in damage before it was extinguished. There is evidence to the effect that, had the sprinkler system been in operation, the damage would not

have exceeded four or five hundred dollars; indeed, there is no evidence to the contrary.

Of course, there can be no doubt about plaintiff's legal liability to the mill company for the entire loss. Acting on that theory, plaintiff arranged to settle with it for twelve thousand five hundred dollars. It notified the defendant of the arrangement and called upon it for indemnity under the terms of the policy quoted above. The defendant denied liability on the ground that the damage was not caused by an *accident* as contemplated by the terms of the endorsement. Plaintiff then instituted this action for the full amount (five thousand dollars) of the indemnity. The cause was tried to a jury, which returned a verdict for plaintiff. From judgment on the verdict, defendant appeals.

Appellant's assignments of error present, in general, two questions: (1) whether the damage or loss was covered by the policy, and (2) whether the court erred in giving a certain instruction and in refusing to give certain requested instructions.

*First.* Appellant does not seriously question that respondent suffered a loss "by reason of liability imposed by law," nor that such loss was "on account of damage to or destruction of property . . . occurring . . . by reason of and during the progress of the business operations of the Assured." Appellant urges, however, that the damage was not "caused solely and directly as a result of an accident." In other words, appellant contends that the breaking of the elbow was not an *accident* in the ordinary sense of the word. It is argued that the elbow might have been defective, and that breaks occur more or less frequently in making installations. In any event, appellant takes the position that the fire, and not the break in the elbow, was the proximate cause of the damage and loss.

█. In construing a contract of insurance, its terms and words, if unambiguous, must be accepted "in their plain, ordinary, and popular sense." 14 R. C. L. 931, § 103. Now, in Webster's New International Dictionary (2d ed.), we

find several definitions of *accident,* within two of which the breaking of the elbow, as testified to by the man who installed it, may fall: (a) "an undesigned, sudden, and unexpected event"; (b) "a mishap resulting in injury to a person or damage to a thing."

That breaks in elbows sometimes occur in the course of installation, makes the incident nonetheless *unexpected* when it does happen. One would hardly say the puncture of a tire was not an accident. Although, in a general way, a puncture may be said to be expected, yet, when it does happen, no one would deny that it is "sudden and unexpected." We think the jury was clearly warranted under the evidence in finding that the break in the elbow was an *accident* within the meaning of the endorsement.

We also are of the opinion that the jury was justified in finding that the damage and loss was the proximate result of the break in the elbow.

Proximate cause is the cause but for which the damage and loss would not have occurred. *Wodnik v. Luna Park Amusement* Co., 69 Wash. 638, 125 Pac. 941, 42 L. R. A. (N. S.) 1070; *Highland v. Wilsonian Inv. Co.,* 171 Wash. 34, 17 P. (2d) 631. The jury may well have viewed the sequence of events which led to the damage and loss in some such light as this: But for the break in the elbow, the water would not have been shut off; but for the shutting off of the water, the sprinkler system would have controlled the fire with no more than five hundred dollars in damage. Although the fire was the active agency which caused the destruction of property, we do not think it can be said to be the cause without which the loss would not have been sustained. In other words, under the evidence, if the sprinkler system had been in operation, the fire would not have caused in excess of five hundred dollars in damage. It is for damages in excess of that amount which respondent sought and recovered indemnity in the amount of the face value of the policy. We think the evidence was sufficient to take the case to the jury and to sustain their verdict.

Before leaving this phase of the appeal, we should note

the distinguishing features between this case and the case of *Isaacson Iron Works v. Ocean Accident & Guaranty Corporation,* 191 Wash. 221, 70 P. (2d) 1026, upon which appellant puts much reliance. The liability policy in that case contained a provision identical with the provision in the policy under consideration here. In the policy under consideration in the *Isaacson* case, however, there were limiting clauses which are not contained in the policy now before us. We think a casual reading of the opinion in that case discloses that the decision, exonerating the insurance company from liability, rests upon the clauses of limitation, and not upon a construction of the provision now under consideration.

■ *Second.* The court gave the following instruction:

"If you find from the evidence in this case that the employee of the Viking Sprinkler System, installing the elbow which connected the old system with the new, applied too much pressure and as a result thereof broke the elbow, *or if you find that the said employee shut off the water from the old sprinkler system or failed, after shutting off said water, to notify the night watchman that the same had been shut off,* and that in so doing did not act as an ordinarily careful and prudent person would have acted under similar circumstances, the Sprinkler System was negligent, and if you further find that such negligence was the proximate cause of the damage suffered by the mill company by reason of said fire, then such damage was the result of an accident within the meaning and terms of the policy." (Italics ours.)

Framed in the disjunctive, as it is, the instruction permitted the jury to return a verdict for respondent without regard to an accidental breaking of the elbow. This is particularly patent in the clause: " . . . or failed, after shutting off said water, to notify the night watchman that the same had been shut off, . . ." Indeed, that clause of the instruction amounted, under the evidence, to a directed verdict for respondent. For it admitted that the employee shut off the water, and that he did not notify the night watchman of the fact. This was negligence, but neg-

ligence, unattended by an accidental cause, would not entitle the assured to recover under the terms of the endorsement. (Negligence incident to the "undesigned, sudden, and unexpected event" makes it nonetheless an accident. 1 C. J. S. 439. *Campbell v. Jones,* 73 Wash. 688, 132 Pac. 635.)

As we interpret the provision under consideration, the loss sustained by assured must be the result of an accident occurring by reason of and during its business operations, and causing damage to property for which the assured is legally liable. In other words, all the elements must be at once present in order to sustain recovery on the policy. The instruction complained of was erroneous.

Since the cause must be remanded for a new trial, we may say that we have examined the requested instructions and find no error in the court's refusal to give any of them. We are of the opinion that the court's instructions adequately covered the substance of all the requested instructions that could have been properly submitted to the jury.

The judgment is reversed and the cause remanded, with direction to grant a new trial.

SIMPSON, C. J., MILLARD, ROBINSON, and MALLERY, JJ., concur.