[No. 46482. En Banc. May 29, 1980.]

MARGUERITE L. DILLARD, *Respondent,* v. WASHINGTON
PUBLIC EMPLOYEES' RETIREMENT SYSTEM,
*Appellant.*

*Slade Gorton, Attorney General,* and *Wayne L. Williams* and *Clifford D. Foster, Assistants,* for appellant.

*Schroeter, Goldmark & Bender,* by *Paul O'Neil,* for respondent.

HICKS, J.—Marguerite Dillard's application in 1974 for disability retirement was denied by the Washington Public Employees' Retirement Board (Board). The Superior Court for Pierce County, reviewing that administrative decision under RCW 34.04.130, affirmed the Board. The Court of Appeals, Division Two, by a divided court, reversed the Superior Court and the Board and granted the retirement sought by Dillard. The Washington Public Employees' Retirement System, acting under RAP 13.2(a), which at the time allowed an appeal as a matter of right when an appellate court divided in reversing a trial court, brought the matter here. We affirm the Court of Appeals.

Beginning in 1959, Dillard was employed as a hospital attendant at Western State Hospital (WSH). In 1970, she was assigned as a ward attendant on Ward M, which housed violence–prone, suicidal and self–destructive mental patients. Staff members, including Dillard, were frequently assailed by these patients, often resulting in their sustaining bruises, scratches and pulled out hair. On one occasion, Dillard was forced over a fourth–story balcony and rescued while hanging from the rail. The assailant fell to her death on the concrete below.

In addition to experiencing physical assaults, staff members often witnessed unsettling traumatic incidents in the course of a working day. For example, one patient bit off another patient's ear and ate it. Cleaning up broken glass and spilled blood was not an unusual part of the daily routine. As a consequence, staff was hard to keep on this ward; in early years, virtually the entire staff turned over on an annual basis.

Dillard has a long history of physical and medical problems with a strong neurotic component. In 1974, her situation culminated in a diagnosis of psychophysiological reaction to anxiety, which resulted in her complete inability to perform her duties at the hospital. The disability was diagnosed as being caused by the stresses and strains of working with and around violent patients.

Dillard applied for a duty disability retirement under RCW 41.40.200. As originally enacted, that statute read:

[U]pon application of a member . . . a member who becomes totally incapacitated for duty as the natural and proximate result of the actual performance of duty, . . . shall be retired: . . .

After being amended in 1951, the statute now reads:

[U]pon application of a member . . . a member who becomes totally incapacitated for duty as the natural and proximate result *of an accident* occurring in the actual performance of duty, . . . shall be retired: . . .

(Italics ours.)

The Board denied Dillard's application because it concluded that the statutory requirement of an "accident" had not been met. As noted above, the Superior Court affirmed the Board's decision. The Court of Appeals reversed the Superior Court and the Board, and held that the series of occurrences leading to Dillard's disability constituted an "accident" within the meaning of RCW 41.40.200. *Dillard v. State Pub. Employees' Retirement Sys.*, 23 Wn. App. 461, 597 P.2d 428 (1979).

Under RCW 34.04, a court reviewing an administrative decision in a contested case may affirm the agency decision or it may reverse the decision if substantial rights of the petitioner have been prejudiced because the agency decision was affected by error of law. RCW 34.04.130(6). Here, the Superior Court affirmed the agency decision. The Court of Appeals reversed on the ground that the Board applied an erroneous standard of law in construing the term "accident".[1]

There is no question that Dillard's total inability to perform her duties at WSH was a direct result of her employment there. The Board specifically found:

---

[1]In a forceful dissent, Reed, J., takes issue with the majority concerning the scope of review of the administrative decision under RCW 34.04. He would confine it to the "clearly erroneous standard" and under that standard he concludes that the Board's decision is clearly not erroneous. *Dillard v. State Pub. Employees' Retirement Sys., supra* at 465 *et seq.*

[T]hat Ms. Dillard became totally incapacitated for duty as a natural and proximate result of the tension and strain placed upon her by her work over a period of years.

As noted above, to be entitled to duty disability retirement, one must be incapacitated for duty as the result of an *accident*. Can it be said, as did the majority of the Court of Appeals, that Dillard's condition is the result of an "accident"?

██ The term "accident" is not defined in the statute, RCW 41.40.200, or elsewhere in the act. We have said that in such instances a word should be accorded its ordinary meaning. *Pacific First Fed. Sav. & Loan Ass'n v. State,* 92 Wn.2d 402, 409, 598 P.2d 387 (1979). The Heritage Illustrated Dictionary and Information Book (1977) defines accident as "[a]n unexpected and undesirable event; a mishap". The Court of Appeals elected to use the definition of accident found in *Viking Automatic Sprinkler Co. v. Pacific Indem. Co.,* 19 Wn.2d 294, 142 P.2d 394 (1943). There, at page 297, quoting from *Webster's New International Dictionary* (2d ed. 1934), the *Viking* court selected two definitions: "(a) 'an undesigned, sudden, and unexpected event'; (b) 'a mishap resulting in injury to a person or damage to a thing.'" Using either definition, our conclusion is the same.

While unexpectedness is often focused upon when considering whether a particular event is an accident, so too is the undesirable result, *i.e.,* the injury following from the incident when in ordinary conversation one speaks of an event as being an accident. *See Yakima Cement Prods. Co. v. Great Am. Ins. Co.,* 93 Wn.2d 210, 215, 608 P.2d 254 (1980). Here, any staff member knows of the possibility of being assailed on Ward M. The actual assault, however, may come unexpectedly and the result may be highly undesirable. We believe an incident occurring under such circumstances is, in common parlance, an accident.

The Board, as the entity charged with carrying out the act, is entitled to considerable judicial deference to its decisions. Nonetheless, we are unable to agree that incidents the Board characterizes as "routine in the twisted world of the mental hospital", are not accidents as the word is commonly understood and used by the ordinary person in the community. We agree with the majority of the Court of Appeals that Dillard sustained a series of accidents on a daily or weekly basis and that her progressive deterioration proximately resulted from such accidents. We find the concluding sentence of the Board's finding of fact No. 10 to be significant:

> The evidence establishes that this deterioration was gradual, occurred over a period of years and cannot be attributed to any single, traumatic event.

The Board rests its determination on its assumption that the "accident" in RCW 41.40.200 must be confined to a single traumatic event. The Court of Appeals in *Dillard* disagrees and at page 465 the majority concludes: "the board applied an erroneous standard of law with which to measure the term 'accident' . . . Thus, the board committed an error of law." We agree.

The judgment of the Court of Appeals is affirmed.

UTTER, C.J., and ROSELLINI, WRIGHT, HOROWITZ, DOLLIVER, and WILLIAMS, JJ., concur.

STAFFORD and BRACHTENBACH, JJ., concur in the result.