[No. 12490-1-I.   Division One.   March 18, 1985.]

BAYLINER MARINE CORPORATION, *Respondent,* v. SHIZUE PERRIGOUE, *Appellant.*

*William A. Stiles, Jr.*, for appellant.

*Perkins, Coie, Stone, Olsen & Williams* and *Calhoun Dickinson*, for respondent.

RINGOLD, J.—Shizue Perrigoue appeals the Superior Court's decision reversing the Board of Industrial Insurance Appeals and reinstating the hearing examiner's order to terminate time loss compensation. Perrigoue argues that the Superior Court did not apply the appropriate standard of review and improperly concluded that Bayliner Marine Corp. complied with the provisions of the workers' compensation act (Act) RCW 51.32.090(4).

On June 1, 1977, Shizue Perrigoue suffered a back injury while working for Bayliner, and became unable to work. She was afforded benefits under the Act for this injury and began seeing Dr. Kenneth S. Carnine for treatment. In the fall of 1978, Bayliner contacted Dr. Carnine concerning Perrigoue's ability to return to light duty work. He responded that she might be able to do some light duty, but that she first required treatment by the Everett Pain Clinic. Perrigoue received treatment at the clinic and was released.

In February 1979, Sue Dornberg, Bayliner's representative, sent Dr. Carnine a letter informing him that Perrigoue had been released from the clinic. She also asked whether Dr. Carnine thought Perrigoue could return to light duty work as a screw sorter. A copy of Bayliner's job description for a screw sorter was enclosed.

The screw sorter position is a flexible job designed for recuperating workers, including those with a back injury such as Perrigoue had suffered. Perrigoue had previously performed this job following a similar back injury without complaint.

On March 21, 1979, Dornberg again wrote to Dr. Carnine requesting that he advise Bayliner whether Perrigoue could return to light duty work. By letter on March 27, 1979, Dr. Carnine responded that he had just recently examined Perrigoue and favored her return to work. He also wrote:

> However there remains a possibility that she will be unable to do even light–duty work because of an increase in pain in her back. This is certainly impossible to predict, but I would encourage your contacting the patient and trying to set up a trial of light–duty employment.

Bayliner then sent Perrigoue a letter informing her that Dr. Carnine had recommended that she return to light duty work and requesting that she contact Bayliner to arrange the date and time she should report for work. Perrigoue never responded to the letter.

At the time of Dr. Carnine's deposition on April 2, 1980, he could not remember receiving a screw sorter's job description from Bayliner. Dr. Carnine opined that Perrigoue was limited to doing work that did not involve lifting, prolonged standing, sitting or reaching above shoulder height. He also stated, "Well, in that letter to Mrs. Dornberg, I extended my thoughts that I would like her to return to work. I did not ever, to my knowledge, sign any formal release for her to return to work and was not contacted for such a release."

The Department of Labor and Industries ordered Perrigoue's time–loss compensation terminated as of May 19,

1979. Perrigoue appealed to the Board, and evidence was presented before a hearing examiner who ruled the termination was appropriate. Dr. Clark Jones, Perrigoue's psychiatrist, testified at the hearing, and Dr. Carnine's deposition was admitted in evidence. The hearing examiner stated:

> Perhaps the biggest problem in this case is as Dr. Jones describes it, the claimant's increasing distrust of the employer due to the prior experiences. However unfortunate this may be, it appears clear from the record that she is able to perform some type of light duty work, a job of that description was available during the period in question and as a result the claimant was not entitled to time–loss compensation between those dates.

The Board, with one member dissenting, reversed the hearing examiner, reasoning the requirements of RCW 51.32.090(4) had not been met, because Dr. Carnine's letter only authorized work on a "trial" basis. When the Board reached its decision it did not have a complete record and believed that Dr. Carnine had not received a screw sorter job description. On presentation of a complete record, the Board recognized that Dr. Carnine had received the job description; nevertheless, the Board denied a motion for reconsideration.

On appeal to the superior court the trial judge reversed the Board and reinstated the hearing examiner's order. In its memorandum decision the court stated:

> The Board can not find any support for its position in the notion that the doctor did not "formally release" the claimant for the light duty work, as the statute does not require any particular formality, nor in its finding (number 3) that the doctor failed to notify the claimant that she was physically able to perform the work. The statute carries no such requirement.

"In any court proceeding, the findings and decision of the Board are prima facie correct until found incorrect by the superior court, by a fair preponderance of the evidence." *Department of Labor & Indus. v. Moser*, 35 Wn. App. 204, 208, 665 P.2d 926 (1983). On appeal from the Board to the

superior court there is a new trial, with the trier of fact reviewing the evidence in the record before the Board.[1]

Review in this court is governed by RCW 51.52.140, which states in part, "Appeal shall lie from the judgment of the superior court as in other civil cases." Consequently, review is limited to whether the trial court's findings of fact are supported by the evidence, and whether its conclusions of law flow therefrom. *Lloyd's of Yakima Floor Ctr. v. Department of Labor & Indus.*, 33 Wn. App. 745, 748, 662 P.2d 391 (1983); *Benedict v. Department of Labor & Indus.*, 63 Wn.2d 12, 385 P.2d 380 (1963).

Both parties stress that the trial court's findings of fact differ from the Board's findings. Each tribunal found, however, that Dr. Carnine had received the job description detailing the type of work Bayliner suggested Perrigoue perform. This finding is supported by the evidence. There is sufficient evidence that the screw sorter job met the qualifications of light duty imposed by Dr. Carnine.

The issue then is whether Dr. Carnine's letter on March 27, 1979, constituted a release of Perrigoue for alternative work under the Act. RCW 51.32.090(4) states in part:

(4) Whenever an employer requests that a worker who is entitled to temporary total disability under this chapter be certified by a physician as able to perform available work other than his or her usual work, the employer shall furnish to the physician, with a copy to the worker, a statement describing the available work in terms that will enable the physician to relate the physical activities of the job to the worker's disability. The physician shall then determine whether the worker is physically able to

---

[1]RCW 51.52.115 states in part: "The hearing in the superior court shall be de novo, but the court shall not receive evidence or testimony other than, or in addition to, that offered before the board or included in the record filed by the board in the superior court . . . In all court proceedings under or pursuant to this title the findings and decision of the board shall be prima facie correct and the burden of proof shall be upon the party attacking the same. If the court shall determine that the board has acted within its power and has correctly construed the law and found the facts, the decision of the board shall be confirmed; otherwise, it shall be reversed or modified. . . . In appeals to the superior court . . ., either party shall be entitled to a trial by jury upon demand . . ."

perform the work described. If the worker is released by his or her physician for said work, . . . [s]hould the available work described, once undertaken by the worker, impede his or her recovery to the extent that in the judgment of his or her physician he or she should not continue to work, the worker's temporary total disability payments shall be resumed when the worker ceases such work.

. . .

In the event of any dispute as to the worker's ability to perform the available work offered by the employer, the department shall make the final determination.

In his March 27 letter, Dr. Carnine stated that Perrigoue should attempt light duty work on a trial basis. The Board concluded that this statement was not a formal release, and that it did not comply with RCW 51.32.090(4). The trial judge found that the doctor's letter constituted a release of the patient to perform a screw sorter's job. The trial court is correct.

The statute provides for the possibility that a worker, after returning to a job, might become unable to continue the work, at which time the disability payments would resume. Dr. Carnine authorized Perrigoue to attempt the job. If thereafter she was unable to continue she would have been entitled to a resumption of benefit payments. Since she did not take the job, however, time–loss compensation was properly terminated.

The judgment is affirmed.

SCHOLFIELD, A.C.J., and COLEMAN, J., concur.