[No. 14629-7-I.   Division One.   September 15, 1986.]

GARRETT FREIGHTLINES, INC., *Respondent,* v. THE
DEPARTMENT OF LABOR AND INDUSTRIES,
*Respondent,* JOHN KOVACH,
*Appellant.*

*Mark A. Lange*, for appellant.

*Ralph J. Brindley, Karen Vanderlaan, Lish Whitson,* and *Helsell, Fetterman, Martin, Todd & Hokanson,* for respondent Garrett Freightlines.

*Kenneth O. Eikenberry, Attorney General,* and *John R. Wasberg, Assistant,* for respondent State.

UTTER, J.*—This workers' compensation claim comes to us on appeal from the trial court. The trial court reversed some of the Board of Industrial Insurance Appeals' findings and held for the employer. We affirm the trial court.

John Kovach worked for Garrett Freight Lines for 15 years. On August 17, 1981, the Department of Labor and Industries received an accident report from Kovach alleging

---

*This appeal was heard by a Supreme Court Justice and two retired Superior Court Judges sitting as Court of Appeals Judges Pro Tempore in Division One.

that he had injured his back on August 6, 1981, during the course of his employment with Garrett.

On August 6, 1981, Kovach told a fellow employee, Ray Norris, that he had a pain in his leg and hip rather than in his back. Kovach also told Norris that he did not know how the alleged injury occurred. In August of 1981, Kovach also told another fellow employee that he had hurt his back and that he did not know whether he had hurt it at work or at home. Kovach was not able to identify when, how, or where the alleged injury took place. Kovach did, however, notice an ache in his back sometime around the second or third hour of his August 6 shift.

Prior to August 6, 1981, Kovach suffered from a congenital back condition, spondylolisthesis. Kovach also had a history of back pain dating back to when he was a teenager. Kovach's spondylolisthesis did not result from any specific traumatic incident occurring during the course of Kovach's employment with Garrett on August 6, 1981. In fact, the trial court specifically found that on or about August 6, 1981, Kovach did not suffer a specific traumatic incident at a fixed time and place which resulted in a medical condition. After August 6, 1981, however, Kovach's spondylolisthesis continued to become more symptomatic and Kovach was required to obtain medical treatment for his condition. Kovach continued to work for Garrett until October 22, 1981.

The court further found that the spondylolisthesis suffered by Kovach is not a disease, illness or morbid process but is a structural abnormality or defect of the vertebrae. The spondylolisthesis was not contracted during the course of Kovach's employment with Garrett.

Because of the absence of a "sudden and tangible happening", to produce "an immediate or prompt result", the trial court concluded that Kovach did not suffer an industrial injury on August 6, 1981. The court further concluded that Kovach's spondylolisthesis was a preexisting congenital condition and not the result of an industrial injury nor was it an occupational injury under RCW 51.08.140. In

finding that Kovach "did not suffer a specific traumatic event at a fixed time or place", the trial court reversed the Board's finding that such an event had taken place. In effect, the trial court reinstated the Board of Industrial Insurance Appeals judge's finding that no "specific traumatic event" occurred on August 6, 1981.

Kovach appeals the trial court's decision and raises the following issues:

1. Whether, under RCW 51.52.115, a trial court is bound by the findings of the Board unless shown they are clearly unsupported by a preponderance of the evidence?

2. Whether the trial court's scope of review is limited to the issues raised by the appellant (from the Board's decision) in its brief and oral argument?

3. Whether appellant suffered an "industrial injury", under RCW 51.08.100, where appellant could fix the time he first noticed pain as somewhere between the second and third hours of his shift?

4. Does RCW 51.08.100, defining "injury", allow for recovery under a repetitive trauma theory?

5. Does Kovach make out a compensable industrial injury claim for occupational disease where medical evidence shows that his back condition became symptomatic as a proximate result of his recurrent lifting and carrying which were natural or inherent parts of his job of loading and unloading freight?

## I
### STANDARD OF REVIEW AND SCOPE OF REVIEW

Appellant contends that the trial court erred in reversing the Board of Industrial Insurance Appeals' factual findings and that the trial court exceeded its scope of review. Because the issues have not been separated, however, their respective bases are unclear.

### A. Standard of Review

Kovach claims, without authority, that the Board's factual findings must stand unless they are shown to be "clearly unsupported by a preponderance of the evidence."

Kovach further claims that the record does not support the trial court's findings of fact 3, 4, 5, 6, and 7 which altered the facts as found by the Board.

■ Kovach has misstated the standard of review. RCW 51.52.115 provides for a de novo review of Board findings. In the new trial, the superior court may review only the evidence in the record of the Board hearing. RCW 51.52-.115; *Bayliner Marine Corp. v. Perrigoue,* 40 Wn. App. 110, 113–14, 697 P.2d 277 (1985). The Board's findings are to be presumed "prima facie correct and the burden of proof shall be upon the party attacking the same." RCW 51.52-.115; *Bayliner,* 40 Wn. App. at 113 (quoting *Department of Labor & Indus. v. Moser,* 35 Wn. App. 204, 208, 665 P.2d 926 (1983)). This presumption means that the Board's decision will only be overturned if

> the trier of fact finds from a fair preponderance of the evidence that such findings and decision of the board are incorrect. It must be a preponderance of the credible evidence. If the trier of fact finds the evidence to be equally balanced then the findings of the board must stand.

(Citations omitted.) *Allison v. Department of Labor & Indus.,* 66 Wn.2d 263, 268, 401 P.2d 982 (1965). Thus, one appealing from the Board's decision would appear to bear the same burden as does the plaintiff in an ordinary civil trial.

■ This requirement is consistent with RCW 51.52.140, which governs appellate review of Industrial Insurance Act (IIA) cases. RCW 51.52.140 reads, in part, "[a]ppeal shall lie from the judgment of the superior court as in other civil cases." This court is thus limited to determining whether the trial court's factual findings are supported by substantial evidence and whether they support the trial court's legal conclusions. Kovach challenges only the trial court's factual findings and implicitly concedes that those findings, if true, would support the trial court's conclusions. Hence, the trial court must be upheld if its findings meet the substantial evidence test.

A party seeking to reverse a trial court's finding of fact

must meet a difficult standard. A reviewing court is constitutionally limited to determining whether there is "substantial evidence" to support the trial court's findings. *See, e.g., Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 575, 343 P.2d 183 (1959); *Nichols Hills Bank v. McCool*, 104 Wn.2d 78, 82, 701 P.2d 1114 (1985); *Ridgeview Properties v. Starbuck*, 96 Wn.2d 716, 719, 638 P.2d 1231 (1982).

"'Substantial evidence is evidence in sufficient quantum to persuade a fair–minded person of the truth of the declared premise.'" *Nichols*, 104 Wn.2d at 82 (quoting *Holland v. Boeing Co.*, 90 Wn.2d 384, 390–91, 583 P.2d 621 (1978)); *Ridgeview*, 96 Wn.2d at 719. Even though an appellate court "may view the evidence presented at trial differently from the [trier] of fact, we cannot substitute our judgment for his." *Allen v. Seattle Police Officers' Guild*, 100 Wn.2d 361, 378, 670 P.2d 246 (1983). One Court of Appeals has concluded that where there is disputed evidence the standard for "substantial evidence" is "any reasonable view [that] substantiates [the trial court's] findings, even though there may be other reasonable interpretations." *Ebling v. Gove's Cove, Inc.*, 34 Wn. App. 495, 501, 663 P.2d 132 (1983). While this deference is generally rooted in the trial court's access to the live testimony, RCW 51.52.140 requires that the trial court's findings be afforded the same deference in workers' compensation cases.

In the present case, there is considerable testimonial evidence on both sides and the record readily supports the trial court's findings. Kovach has not attempted to rebut this evidence and any attempt to do so would probably be unsuccessful.

## B. Scope of Review

Kovach claims that the trial court went beyond the scope of review when it considered issues other than the two issues allegedly raised in Garrett's brief and oral argument before the superior court. Kovach never explains why Garrett's petition for superior court review should not establish the scope of review. The petition seeks review of "each and

every part of" the Board's order.

RCW 51.52.110 provides that anyone aggrieved by the Board's decision has 30 days in which to appeal to superior court. The appeal is perfected by filing a notice with the court clerk and by serving copies of the notice on the director and on the Board. With the exception for meeting a bond requirement, not relevant here, the aggrieved party need not do more. The Board is obligated, however, to file with the court clerk "the notice of appeal and other pleadings, testimony and exhibits, and the board's decision and order, which shall become the record in such case." RCW 51.52.110. While RCW 51.52.115 limits the trial court to considering only the record, the statute does not require the petitioner to do more than give notice to protect its right of full review.

█ The little discussion on the subject implies that the court is limited only in that it cannot go *beyond* the Board's record.

> When reviewing a workmen's compensation case, an appellate court can evaluate a written record to test conclusions that have been drawn from the facts, explore "for sufficiency of the probative evidence to support findings of fact," and analyze "findings when the evidence is undisputed, uncontradicted, and unimpeached."

(Citations omitted.) *Gilbertson v. Department of Labor & Indus.*, 22 Wn. App. 813, 816, 592 P.2d 665 (1979). Thus the trial court, in a "de novo" review, has no limitation on the intensity of its review of that record.

## II
### INJURY

Kovach claims the trial court erred when it concluded that no compensable industrial injury occurred because "no sudden and tangible happening occurred" on the date, August 6, 1981, his spondylolisthesis became symptomatic. He contends that, by "fixing" the accident between the second and third hours of his shift, he has met the requirements for a compensable injury. To reach this conclusion, however, Kovach must first convince the court that there is

not substantial evidence to support the finding that Kovach could not "identify when, how, or where the alleged injury took place". The following discussion necessarily assumes that Kovach has so convinced the court.

To recover under the IIA, "it is sufficient to sustain an injury which aggravates a preexisting infirmity." *Longview Fibre Co. v. Weimer,* 95 Wn.2d 583, 589, 628 P.2d 456 (1981) (collecting cases). RCW 51.08.100 defines "injury" as

a sudden and tangible happening, of a traumatic nature, producing an immediate or prompt result, and occurring from without, and such physical conditions as result therefrom.

Garrett argues that the existence of the spondylolisthesis and the medical expert's inability to relate Kovach's pain to a specific event makes this case more like the heart attack or cerebral vascular cases than like the typical back injury cases. The Department of Labor and Industries (L & I) contends that RCW 51.08.100 requires Kovach to show with some definiteness the time frames for both cause—the "sudden and tangible happening, of a traumatic nature"— and effect, or symptoms. L & I argues that Kovach has only identified the moment when he first noticed the pain, *i.e.,* the effect, and has failed to show that the cause of the injury occurred in the workplace.

■ Washington law does not clearly mandate a certain temporal duration to establish "a sudden and tangible happening," as required by RCW 51.08.100. The statute requires a relation between the injury and "some identifiable happening, event, cause or occurrence capable of being fixed at some point in time and connected with the employment." *Spino v. Department of Labor & Indus.,* 1 Wn. App. 730, 733, 463 P.2d 256 (1969). The key is not in the establishment of a duration or time frame, as L & I suggests, but in the establishment of causation, the connection between the physical condition, and employment. This causal condition

must be established by medical testimony. It is not always necessary, however, to prove every element of

such causation by medical testimony. If, from the facts and circumstances and the medical testimony given, a reasonable person can infer that the causal connection exists, the evidence is sufficient.

(Citations omitted.) *Bennett v. Department of Labor & Indus.,* 95 Wn.2d 531, 533, 627 P.2d 104 (1981). The weight of the lay witness testimony is a matter for the fact finder.

In the present case, the expert medical testimony could not establish a "tangible happening" in the workplace that would have caused Kovach's symptoms. Instead, the expert believed that the repetitive lifting at Garrett aggravated Kovach's spondylolisthesis. Given medical testimony that the "recurrent lifting" aggravated Kovach's condition, a fact trier could have believed Kovach's experience of radiating pain between the second and third hours of his shift was directly related to his lifting activities at Garrett on that day. However, the trial court chose to not accept all the implications of Kovach's testimony, complicated as it was by Kovach's earlier football injury, subsequent golfing experience, and Dr. Pierce's inability to identify a specific workplace event. Because this conflicting testimony meets the substantial evidence requirement, there appears no legal basis for reversing the trial court on this issue. *See, e.g., Ebling,* 34 Wn. App. at 501.

## III
### REPETITIVE TRAUMA

If this court does not overturn the trial court's finding that the time of injury cannot be sufficiently "fixed" to meet RCW 51.08.100 requirements, then, Kovach contends, the court should allow IIA coverage based on the "repetitive trauma" he suffered by loading and unloading Garrett trucks. Kovach relies heavily on Dr. Pierce's testimony to show that only his work at Garrett adequately explains his injury.

Kovach makes a compelling res ipsa loquitur argument. The problem, however, is the narrow definition of "injury" under the IIA. The "recurrent trauma" theory does not

seem consistent with a "sudden and tangible happening . . . producing an immediate and prompt result". RCW 51.08.100.

Kovach argues, however, that dicta in *Lehtinen v. Weyerhaeuser Co.,* 63 Wn.2d 456, 387 P.2d 760 (1963) reflects the present understanding of RCW 51.08.100 requirements. There, the court recognized that "repetitive trauma" has been accepted generally as a basis for allowing workers' compensation. *Lehtinen,* 63 Wn.2d at 458–59. It further noted that establishing causal linkage between "a physical condition and a happening", rather than some temporal linkage, was key to the award.

> Thus, if the medical testimony established, in terms of probability, a causal relationship between appellant's back condition and the jolting he endured on October 3, 1958, then we do not hesitate to state that any resulting disability constituted an industrial injury under RCW 51.08.100.

*Lehtinen,* 63 Wn.2d at 460.

Kovach also cites a more recent case, *Dillard v. State Pub. Employees' Retirement Sys.,* 23 Wn. App. 461, 597 P.2d 428 (1979), *aff'd,* 93 Wn.2d 677, 611 P.2d 1231 (1980), as Washington authority for acceptance of the "repeated trauma" doctrine. In *Dillard,* the Supreme Court upheld the Court of Appeals ruling that an employee in a violent ward at Western State Hospital had been incapacitated due to an accident within the meaning of RCW 41.40.200. The "accident" consisted of a series of violent confrontations with patients over the course of 4 years. The court concluded that her disability, caused by the stress of working with violent patients, would allow her to retire with a "duty disability" under the Washington Public Employees' Retirement System.

Kovach fails to note, however, that the *Dillard* court affirmed the trial court primarily because the facts met the dictionary definition of "accident". "The term 'accident' is not defined in the statute, RCW 41.40.200, or elsewhere in the act. We have said that in such instances a word should

be accorded its ordinary meaning." (Citations omitted.) *Dillard,* 93 Wn.2d at 680. Moreover, the court disagreed with the Retirement Board's conclusion that the physical assaults were part of the "'routine in the twisted world of the mental hospital'". *Dillard,* 93 Wn.2d at 681. This foreclosed the court's having to consider whether the accident would be compensable if it were "the *cumulative effect* of long–continued routine and customary duties [which] does *not* constitute an industrial injury." (Citations omitted. Italics ours.) *Lehtinen,* 63 Wn.2d at 459.

In the present case, Kovach seeks to have his back problems characterized as an "injury", a term very narrowly defined in RCW 51.08.100. Moreover, to make his argument of "repetitive trauma" he must concede that his back problems are "the cumulative effect" of his years of loading and unloading Garrett trucks. This would seem to distinguish his case from *Lehtinen,* in which the employee sustained a back injury by virtue of a series of jolts suffered on a single day. Hence, the comparatively short duration of Lehtinen's series of events allowed the court to distinguish the case from an earlier case, *Cooper v. Department of Labor & Indus.,* 49 Wn.2d 826, 307 P.2d 272 (1957), *adhered to on rehearing,* 54 Wn.2d 428, 342 P.2d 219 (1959), in which the court had rejected the repetitive trauma theory. Finally, the part of *Lehtinen* upon which Kovach relies so heavily, was clearly dicta and the court did not address the peculiarly narrow definition of "injury" in RCW 51.08.100, thus making the court's references to the law in other jurisdictions much less helpful. While the language of RCW 51.08.100 is crabbed and probably inconsistent with the professed goal of the IIA, it is nonetheless clear and relatively unambiguous. Again we must affirm the trial court.

## IV
### Occupational Disease

If the court rejects all other bases for allowing coverage of his condition, then, Kovach contends, the court should find his condition to be an occupational disease. The basis

346

of this contention is the remedial character of the IIA and that Kovach's condition was a result of his work requirements.

Plaintiff's notice of appeal to the Board did not raise an "occupational disease" claim. RCW 51.52.070 declares that the worker "shall be deemed to have waived all objections or irregularities concerning the matter on which such appeal is taken other than those specifically set forth in such notice of appeal".

Plaintiff's petition for review to the Board failed to challenge either the findings of fact or conclusions of law (of the industrial appeals judge) relating to his occupational disease theory. RCW 51.52.104 provides that a petition for review "shall set forth in detail the grounds therefor and the party or parties filing the same shall be deemed to have waived all objections or irregularities not specifically set forth therein."

Because plaintiff failed to raise the occupational disease issue in his notice of appeal and petition for review he must be deemed to have waived this argument. Accordingly neither the Board nor the Superior Court had jurisdiction to declare findings or conclusions on this issue.

For the above reasons, we must affirm the trial court.

COLE and SCHUMACHER, JJ. Pro Tem., concur.