IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | No. 33122-9-III |
| Neil Hornsby. | ) | |
| | ) | |
| | ) | UNPUBLISHED OPINION |
| | ) | |
| | ) | |
| | ) | |

FEARING, C.J. — Neil Hornsby appeals from the superior court's ruling affirming the Board of Industrial Insurance Appeals' (Board) denial of his claim for benefits for an occupational disease. Because facts support the superior court's ruling, we affirm the superior court.

## FACTS

On July 31, 2000, Neil Hornsby commenced employment with Alcoa, Inc., at its Wenatchee smelter. According to Hornsby, he had no health problems when he began work for Alcoa. Nevertheless, a preemployment screening chest x-ray showed small nodules in his lung. At the time, Hornsby reported to Alcoa that he smoked one pack of cigarettes each day.

At the Alcoa plant, Neil Hornsby performed many duties, including inserting and removing carbon rods from crucibles of molten ore. Other duties included tasks near coal tar pitch pots that emit black, green, and yellow smoke and scrubbing pigeon feces from the facility. According to Hornsby, his Alcoa employment exposed him to dust from aluminum oxide, alumina, soda ash, and asbestos.

When performing all duties at Alcoa, Neil Hornsby wore a paper respirator. While working around the smelter crucibles, he also wore a protective Tyvek suit, although the suit was not airtight. A Tyvek suit is a DuPont trademarked white one-piece, disposable garment composed of flashspun high-density polyethylene.

During a 2001 health screening, Neil Hornsby reported that he smoked between one and one-half packs per day. On July 2, 2001, during a production curtailment, Alcoa released Hornsby, and Hornsby journeyed to work at a Colorado coal mine. A preemployment screening chest x-ray for the coal miner's job detected black lung. Due to a broken hand, Hornsby left mine employment after three weeks.

On July 21, 2003, Neil Hornsby returned to work at Alcoa's Wenatchee smelter. During another health screening, Hornsby reported that he smoked three quarters of a pack per day. Because the plant remained on curtailment, Hornsby cleaned and vacuumed smelter crucibles until aluminum production restarted in December 2004.

In 2005, Neil Hornsby began use, during Alcoa job duties, of a face mask cartridge respirator, which provided better protection than a paper respirator. During the

2

same year, Hornsby developed health problems. A 2007 breathing test showed mildly restricted breathing.

On May 1, 2008, Neil Hornsby left Alcoa employment because of fatigue. He worked on an Alaskan pipeline from July to November 2008. He then retired due to health difficulties and has not worked since. He returned to Washington State in 2009.

Medical providers thereafter diagnosed Neil Hornsby with desquamative interstitial pneumonia (DIP), interstitial fibrosis, and respiratory bronchiolitis. DIP involves an abnormal amount of macrophages filling the lung air spaces. A macrophage is a cell that surrounds and ingests smaller cells, dust particles, or bacteria. A high number of macrophages precludes air from reaching the capillaries in the walls of lung air sacs resulting in a lack of oxygen and shortness of breath. Interstitial fibrosis entails scar tissue occupying the lung's interstitium, which supports the lung with air spaces and airways. Fibrosis means the formation of collagen or scar tissue. Respiratory bronchiolitis involves inflammation of the bronchioles, passageways from the nose and mouth carrying air to the lungs.

## PROCEDURE

On September 9, 2011, Neil Hornsby applied for Department of Labor & Industries benefits for an occupational disease. He claimed he sustained damage to his lungs in the course of employment at Alcoa. The department denied his claim and wrote:

3

[1.] That the claimant's condition is not the result of an industrial injury as defined by the industrial insurance laws.

[2.] That the claimant's condition is not an occupational disease as contemplated by section 51.08.140 RCW.

1 Admin. Record (AR) at 176.

Neil Hornsby appealed his denial of benefits to the Board of Industrial Insurance Appeals. The Board conducted an evidentiary hearing, during which it reviewed many physician depositions conducted over a period of months. A synopsis of each medical witness's testimony follows.

## Saba Lodhi

Saba Lodhi is a Wenatchee pulmonologist who treated Neil Hornsby. Lodhi did not testify in the Board of Industrial Insurance Appeals hearing, but the Board entered her medical records as exhibits. Many testifying physicians referred to her records.

## Stephen B. Knox

Stephen Knox is a Wenatchee general surgeon. On June 17, Dr. Knox, at the request of Dr. Saba Lodhi, performed a lung biopsy on Neil Hornsby because Lodhi found interstitial lung disease on x-rays. Knox removed two biopsies from an area where a computed tomography (CT) scan showed scarring and concluded that the biopsies confirmed nonspecific interstitial pneumonitis.

## Ganesh Raghu

Ganesh Raghu is a professor of medicine at the University of Washington, an

4

attending physician at the University of Washington Medical Center, and director of The Center for Interstitial Lung Disease. Raghu specializes in pulmonary disease, lung transplantation, and interstitial lung disease. Dr. Raghu, at the request of Saba Lodhi, first examined Neil Hornsby on September 21, 2012, for interstitial lung disease. Raghu compared earlier pulmonary function tests to the ones he conducted during the September visit, and the comparison showed a deterioration in Hornsby's lung capacity. Dr. Raghu recommended Dr. Jerrold Abraham, a pulmonary pathologist in New York, review Hornsby's biopsies to determine whether work exposures may have contributed to the pulmonary fibrosis.

Dr. Ganesh Raghu saw Neil Hornsby again on January 18, 2013. Raghu then conducted a breathing and walking test that detected Hornsby's lung capacity had declined since earlier tests. Dr. Raghu saw Hornsby for a third time on May 1, 2013. He conducted the same walking and breathing tests on Hornsby and found minimal decline.

During his deposition, Ganesh Raghu testified that smoking causes desquamative interstitial pneumonia. Raghu further testified that he lacked knowledge of protective gear that Hornsby wore at Alcoa and the chemicals or toxins to which Hornsby was exposed. Dr. Raghu did not provide a medical conclusion as to whether Neil Hornsby's lung disease was caused by exposures at Alcoa or smoking.

5

Robert E. Cox

Robert Cox works in pulmonary critical care at Swedish Edmonds Hospital and has knowledge of aluminum respiratory issues. Dr. Cox saw Neil Hornsby for a pulmonary evaluation on October 24, 2011, at the request of Alcoa. Cox performed a spirometry and pulmonary function test on Hornsby, tests required for department claims. Cox also interviewed Hornsby about his work history.

Before testifying in the Labor & Industries appeal, Robert Cox reviewed Board testimony from Neil Hornsby regarding his exposures at Alcoa. Cox also reviewed medical records prepared by Drs. Houghland, Lodhi, Raghu, Abraham, and Knox.

Based on his examination of Neil Hornsby and review of medical records, Dr. Robert Cox diagnosed Neil Hornsby with DIP and attributed the DIP to cigarette smoking. Cox further opined that respiratory bronchiolitis is the first sign of lesions in the lung caused by cigarette smoking. Dr. Cox believed the small nodules found in Hornsby's July 2000 preemployment chest x-ray evidenced the onset of DIP and bronchiolitis. He concluded that Hornsby's lung diseases were not caused by the working conditions at Alcoa.

Jerrold L. Abraham

Jerrold Abraham is an anatomic pathologist at State University of New York, who focuses on occupational lung disease. Jerrold Abraham received Neil Hornsby's lung biopsies, which he examined using a scanning electronic microscope energy dispersive

6

x-ray spectroscopy SEM/EDS. Abraham determined Neil Hornsby suffered from a high level of dust in his lungs. The level was consistent with both smoking and other exposures. Dr. Abraham detected many metal particles in the biopsies, which did not result from smoking.

During Board testimony, Neil Hornsby asked Dr. Jerrold Abraham to opine on the diagnosis and cause of his lung diseases:

> Q  Do you have an opinion on a more probably than not basis to a reasonable degree of medical certainty whether the aluminum found in Mr. Hornsby's biopsies caused him to have lung diseases, DIP, pulmonary fibrosis, interstitial fibrosis and respiratory bronchiolitis?
> A  Well, I have to take those different descriptions one at a time. Certainly the aluminum exposure that is reflected in his biopsy is of the type that has been previously seen to cause DIP, and to be associated with interstitial fibrosis. The respiratory bronchiolitis, part of it is more likely related to smoking but could also be contributed to by the aluminum. But smoking is the major cause for the respiratory bronchiolitis which is different from the fibrosis or the DIP pattern itself.
> Q  If Mr. Hornsby had not been exposed to aluminum, would smoking cigarettes alone ha[ve] caused the abnormal findings you discussed?
> A  It wouldn't have caused all of them, but it would have probably caused the respiratory bronchiolitis. But it wouldn't have caused interstitial fibrosis as far as I am aware.

10 AR (Mar. 18, 2013) at 32-33.

## Steven M. Simons

Steven Simons is a pulmonologist and a professor of medicine at the University of California Los Angeles Medical School. Simons never examined or treated Neil

Hornsby. Alcoa asked Dr. Simons to provide medical opinions based on Board testimony and the records of other physicians.

Steven Simmons diagnosed Neil Hornsby with DIP secondary to smoking and respiratory bronchiolitis, inflammation characteristic of smoking. He concluded that smoking more likely caused all of Hornsby's lung diseases. Dr. Simons further opined that Hornsby did not suffer from idiopathic pulmonary fibrosis.

After reviewing all evidence, the Board of Industrial Insurance Appeals upheld the Department of Labor & Industries' denial of Neil Hornsby's occupational health claim. The Board adopted the following relevant findings of fact:

> 3. Mr. Hornsby's exposure to aluminum dust and aluminum fumes constitutes distinctive conditions of employment.
> 4. Mr. Hornsby's conditions diagnosed as desquamative interstitial pneumonia, respiratory bronchiolitis, and interstitial fibrosis did not arise naturally and proximately out of the distinctive conditions of his employment.

1 AR at 76. The Board entered the following conclusion of law:

> 2. Mr. Hornsby's conditions diagnosed as desquamative interstitial pneumonia, respiratory bronchiolitis, and interstitial fibrosis is [sic] not an occupational disease within the meaning of RCW 51.08.140.

1 AR at 76.

Neil Hornsby appealed to the superior court. The trial court reviewed the record of the Board of Industrial Insurance Appeals and affirmed the Board's decision. The superior court commented: "what the court has to determine . . . are two questions. One,

8

whether the aluminum in Mr. Hornsby's lungs came from Alcoa and if it did, did that cause any of his lung problems." Report of Proceedings (RP) at 56. The trial court determined that more likely than not some of the aluminum in Neil Hornsby's lungs resulted from his work at Alcoa. Nevertheless, the court ruled that the evidence did not show a causal relation between DIP, interstitial fibrosis, and respiratory bronchiolitis, on the one hand, and work exposure, on the other hand. Smoking caused most of the diseases. The court considered Dr. Simons' testimony convincing and the testimony of Dr. Cox less persuasive. The trial court determined Dr. Abraham's passive response to specific questions and lack of peer reviewed work on DIP troubling. The court also cited Dr. Raghu's lack of testimonial support for Neil Hornsby's occupational health claim as a factor in its decision.

## LAW AND ANALYSIS

The issue is whether substantial evidence supports the trial court's findings and whether the findings support the trial court's conclusions of law and decision. We answer in the affirmative.

This court's review of a superior court's decision is limited to whether substantial evidence supports the superior court's factual findings, and then we review de novo whether the superior court's conclusions of law flow from those findings. *Ruse v. Dep't of Labor & Indus.*, 138 Wn.2d 1, 5-6, 977 P.2d 570 (1999); *Young v. Dep't of Labor & Indus.*, 81 Wn. App. 123, 128, 913 P.2d 402 (1996); *Watson v. Dep't of Labor & Indus.*,

9

133 Wn. App. 903, 909, 138 P.3d 177 (2006). Even though we may view the evidence presented at trial differently from the trier of fact, we cannot substitute our judgment for his. *Allen v. Seattle Police Officers' Guild*, 100 Wn.2d 361, 378, 670 P.2d 246 (1983); *Garrett Freightlines, Inc. v. Dep't of Labor & Indus.*, 45 Wn. App. 335, 340, 725 P.2d 463 (1986). Substantial evidence is evidence of sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise. *Bering v. Share*, 106 Wn.2d 212, 220, 721 P.2d 918 (1986); *Grimes v. Lakeside Indus.*, 78 Wn. App. 554, 560-61, 897 P.2d 431 (1995).

Neil Hornsby contends that the trial court erred in determining that his lung diseases were not occupational diseases. Hornsby argues that the evidence overwhelmingly showed that his DIP, interstitial fibrosis, and respiratory bronchiolitis arose naturally and proximately from the distinctive conditions of his employment at Alcoa.

A worker shall receive benefits under the Industrial Insurance Act, Title 51 RCW, for disabilities resulting from occupational diseases. RCW 51.32.180; *Dennis v. Dep't of Labor & Indus.*, 109 Wn.2d 467, 470, 745 P.2d 1295 (1987). To establish an occupational disease an employee must show that his disease arose both "naturally" and "proximately" from his employment. RCW 51.08.140; *Dennis*, 109 Wn.2d at 481. To meet the "naturally" prong, the employee need prove that his condition came about "as a natural consequence or incident of distinctive conditions" of his particular employment.

10

*Dennis*, 109 Wn.2d at 481; *Potter v. Dep't of Labor & Indus.*, 172 Wn. App. 301, 315, 289 P.3d 727 (2012). The employee carries the burden of showing that the conditions of employment gave rise to his occupational disease and not that the disease is common to his particular employment. *Dennis*, 109 Wn.2d at 481; *Potter*, 172 Wn. App. at 315. To meet the "proximately" prong, the worker must establish by "competent medical testimony" that his claimed condition was probably, not merely possibly, caused by his employment. *Dennis*, 109 Wn.2d at 477; *City of Bellevue v. Raum*, 171 Wn. App. 124, 140-41, 286 P.3d 695 (2012); *Potter*, 172 Wn. App. at 311.

Neil Hornsby's trial court thoroughly weighed the evidence and testimony of all testifying physicians. Drs. Robert Cox and Stephen Simons averred that smoking more probably caused Neil Hornsby's lung diseases. Hornsby called two doctors, Drs. Ganesh Raghu and Jerrold Abraham, to testify on his behalf. Hornsby's experts provided no verification that his lung diseases were probably caused by his employment and not exposures in his everyday life. Raghu provided no testimony as to the causation of Hornsby's ailments.

Neil Hornsby contends that the trial court erred in concluding that Jerrold Abraham gave an unconvincing answer to the question of causation. Hornsby argues that Dr. Abraham gave an answer, on a more probable than not basis, as to the cause of each diagnosis. Nevertheless, Abraham did not specifically state whether aluminum dust caused a disease, but rather testified that exposure to the dust is associated with one of

11

Hornsby's types of diseases. Abraham provided no conclusive response required to establish causation. We agree with the trial court's comment in its oral decision:

> Counsel asked just the go-to question, the perfect question, but he [Dr. Abraham] doesn't answer it. He's nonresponsive. And no one really pushes him. And I suspect had he been pushed, he would have admitted, well, it's possible, but—and I've seen it so it's possible but I'd have to know a whole lot more before I could opine whether or not in this particular case his DIP was caused by the aluminum.

RP at 59.

Neil Hornsby asserts that the testimony of Dr. Jerrold Abraham should be given significant weight because he was an attending physician. In workers' compensation cases, the court must give special consideration to the opinion of the attending physician. *Hamilton v. Dep't of Labor & Indus.*, 111 Wn.2d 569, 571, 761 P.2d 618 (1988); *Intalco Alum. Corp. v. Dep't of Labor & Indus.*, 66 Wn. App. 644, 654, 833 P.2d 390 (1992). This is because an attending physician is not an expert hired by a party to give a particular opinion. *Intalco*, 66 Wn. App. at 654. Nevertheless, Hornsby's argument fails because the law only considers one an attending physician if the doctor personally meets with the patient. *Spalding v. Dep't of Labor & Indus.*, 29 Wn.2d 115, 128-29, 186 P.2d 76 (1947). Anyway, Dr. Abraham uttered no opinion that Hornsby's lung disease was probably caused by work exposures.

Neil Hornsby contends the trial court erred by relying on the opinion of Dr. Saba Lodhi. Hornsby argues that Lodhi did not testify before the Board thereby taking away

12

his right to cross-examination. Alcoa contends that the trial court did not rely on Dr.

Lodhi's opinion. Alcoa argues that Lodhi's medical records and opinion were admitted

evidence that was reviewed by each of the four doctors.

Neil Hornsby did not object to the admission of Dr. Lodhi's medical opinions at

any point in the procedural history. We do not address objections raised for the first time

on appeal. RAP 2.5(a). The trial court did not rely on the medical opinion of Dr. Lodhi.

The court relied on the testimony of the four testifying doctors. One physician, when

rendering opinions, may rely on the medical records of another physician. ER 703; *In re

Pers. Restraint of Young*, 122 Wn.2d 1, 58, 857 P.2d 989 (1993); *Walker v. State*, 121

Wn.2d 214, 218, 848 P.2d 721 (1993); *Engler v. Woodman*, 54 Wn.2d 360, 363, 340 P.2d

563 (1959); FED. R. EVID. 703 advisory committee's note, 56 F.R.D. 183, 283-84 (1973);

5B KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW & PRACTICE § 703.5, at

231 (2007).

Neil Hornsby may argue that his constitutional right to confront witnesses was

violated by the use of Saba Lodhi's records without the opportunity to cross-examine her.

The confrontation clause of the United States Constitution provides: "[i]n all *criminal*

prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses

against him." U.S. CONST. amend. VI (emphasis added); *Crawford v. Washington*, 541

U.S. 36, 42, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). Washington has adopted a

similar confrontation clause, providing that: "In *criminal* prosecutions the accused shall

13

No. 33122-9-III
*In re Hornsby*

have the right . . . to meet the witnesses against him face to face. . . ." WASH. CONST. art. I, § 22 (emphasis added). No court has applied either the state or federal clause outside the context of a criminal proceeding.

CONCLUSION

We affirm the superior court.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, C.J.

WE CONCUR:

_____
Siddoway, J.

_____
Pennell, J.

14