[No. 1486-2. Division Two. December 9, 1975.]

State Farm Mutual Automobile Insurance Company, *Respondent,* v. Centennial Insurance Company, *Appellant.*

*Terrance D. Hannan* (of *Read, Wolfe, Hannan & Mercer*), for appellant.

*Duane Lansverk* (of *Landerholm, Memovich, Lansverk, Whitesides, Marsh, Morse & Wilkinson*) and *Garfield R. Jeffers,* for respondent.

Petrie, C.J.—This is a dispute among three insurance companies to determine the potential liability, if any, each has for damages sustained by a driver of an automobile when his passenger accidentally shot and wounded him. The trial court held (1) that the driver's automobile liability insurance policy provided primary coverage, and (2) that the passenger's automobile liability insurance policy and the passenger's homeowner's liability insurance policy

provided excess coverage. We hold that the driver's automobile liability insurance does not provide coverage for the accident.

Larry Wold wounded his hunting companion, Joseph Rogers, while the two men were returning home from a hunting excursion in Rogers' automobile. The accident occurred when passenger, Wold, remembered that he had failed to unload his rifle, as is customary, before entering the vehicle and attempted to eject the three remaining shells while the automobile was in motion. After the first two shells successfully cleared the chamber, the third misfired and hit the driver, Rogers, in the leg.

State Farm, Wold's insurer under a homeowner's policy, filed a complaint for declaratory judgment against Wold's automobile liability carrier, Gulf, and Rogers' automobile liability carrier, Centennial. By summary judgment the trial court determined that Centennial's policy provides primary coverage for Rogers' injuries while State Farm's and Gulf's policies provide excess coverage. Centennial appealed; Gulf did not appeal and did not participate in the appeal.

Centennial concedes—and therefore we do not decide— (1) Wold's riding in the vehicle as a passenger with Rogers' permission constituted a sufficient "use" of the car so as to render Wold an additional insured under the definition of that term in Centennial's policy; see *Gronquist v. Transit Cas. Co.*, 105 N.J. Super. 363, 252 A.2d 232 (1969); and (2) Centennial's policy does not preclude coverage by reason of the fact that the *named* insured, Rogers, is the potential claimant injured by an act of an additional insured. *See State Farm Mut. Auto. Ins. Co. v. Jacober*, 10 Cal. 3d 193, 514 P.2d 953, 110 Cal. Rptr. 1 (1973).

Centennial, however, denies liability. Both Gulf and Centennial agreed to pay, on behalf of their respective insureds, all sums which the insured shall become legally obligated to pay as damages because of bodily injury sustained by any person "arising out of the ownership, maintenance or use . . ." including the loading and unloading

of any insured vehicle. RCW 46.29.490(2)(b) effectively mandates that motor vehicle liability policies contain the quoted phrase.

The words "arising out of the use" are unambiguous and require a degree of causality between the injury and the use of the vehicle. *Handley v. Oakley*, 10 Wn.2d 396, 116 P.2d 833 (1941). Our concern is whether Wold's act of unloading his rifle in a moving vehicle while on a hunting trip provides the degree of causality sufficient to invoke coverage under Centennial's policy.

■■ The terms of an insurance policy must be construed in light of the plain, ordinary and popular meaning of the words used. *Riordan v. Commercial Travelers Mut. Ins. Co.*, 11 Wn. App. 707, 525 P.2d 804 (1974). The phrase "arising out of the use" is not synonymous with "while riding" or "in the course of." Such a construction would effectively delete from the contract the words "arising out of." Nor does the provision force the interpretation that before coverage can exist it must appear that the injury was the proximate result of the use of the automobile. Such a construction would do equal violence to the normal meaning of those words. If such were the intent of Centennial, the words "caused by" or "resulted from" would have been used.

Thus, before an injury arises out of the use of a vehicle, the vehicle must contribute in some fashion toward producing the injury; the vehicle must be more than the coincidental place in which the injury occurred. The crucial question is: What *motoring risks* did the parties intend to cover by the automobile policy? The parties' intentions control the extent of coverage. *Aetna Ins. Co. v. Kent*, 85 Wn.2d 942, 540 P.2d 1383 (1975). Thus, under a slightly different fact pattern, one court declared:

> The inquiry should be whether the negligent act which caused the injury, although not foreseen or expected, was in the contemplation of the parties to the insurance contract *a natural and reasonable incident or consequence of the use of the automobile,* and thus a risk against which

they might reasonably expect those insured under the policy would be protected.

(Italics ours.) *Westchester Fire Ins. Co. v. Continental Ins. Cos.*, 126 N.J. Super. 29, 38, 312 A.2d 664, 669 (1973).

State Farm contends that Wold and Rogers *used* the vehicle on a hunting trip. Therefore, they must have anticipated transporting guns in the automobile. That is obvious, but the unloading of a weapon in the automobile is not normally anticipated. The more pertinent inquiry is whether the parties to the contract intended to cover the risk which flows from the unloading of a weapon in a moving vehicle returning from a hunting trip, when the ordinary experiences of mankind dictate that guns are customarily unloaded when not intended for immediate use. *National Union Fire Ins. Co. v. Bruecks*, 179 Neb. 642, 139 N.W.2d 821 (1966). Wold's unloading of the weapon in the moving vehicle was both illegal and unsafe. It caused an injury that may or may not have been foreseen or expected from such use of the weapon, but can it be said that Wold's handling of the dangerous instrumentality in this manner was a natural and reasonable incident or consequence of the use of the vehicle on a hunting trip? We cannot so conclude.

The so-called vehicle "loading and unloading" cases are readily distinguishable. Where a gun accidentally discharges while it is being loaded into an insured's vehicle, coverage is premised on the "loading and unloading" clause of the insurance contract. Clearly, the unloading of one's rifle preparatory to entering a vehicle is the kind of *customary* behavior contemplated by the parties to a hunting trip. Thus, it is specifically anticipated behavior, and coverage is intended by the parties to an insurance contract. But we do not deem it appropriate to apply the rule regarding loading and unloading a vehicle to an attempt to unload a gun in a moving vehicle.

We hold that the injury in this case did not arise out of the use of the vehicle as contemplated by the parties to the

insurance contract. Thus, Centennial is not liable for Rogers' damages.

It follows from our analysis that neither the Centennial nor the Gulf policy provides any coverage for injuries to Joseph Rogers' leg, and that the State Farm homeowner policy affords the only coverage for Wold's potential liability. Accordingly, the judgment is vacated in its entirety and the case is remanded with instructions to enter judgment consistent with this opinion.

PEARSON and REED, JJ., concur.

Petition for rehearing denied March 1, 1976.

Review denied by Supreme Court May 25, 1976.