[No. 45640.   En Banc.   April 5, 1979.]

TRANSAMERICA INSURANCE GROUP, *Respondent,* v. UNITED PACIFIC INSURANCE COMPANY, *Appellant.*

*Rush & Kleinwachter,* by *William J. Rush,* for appellant.

*Gordon, Thomas, Honeywell, Malanca, Peterson & O'Hern, Richard J. Jensen, Mark G. Honeywell,* and *Joseph F. Quinn,* for respondent.

STAFFORD, J.—Plaintiff Transamerica Insurance Group (Transamerica) appealed the dismissal of its claim for reimbursement from defendant United Pacific Insurance Company (United). The trial court was reversed in a non-unanimous decision of the Court of Appeals and defendant appeals. We affirm the Court of Appeals.

Albert Savisky and Jack Rea had been elk hunting for several days. While driving in Savisky's Scout truck, both men had their rifles in a gun rack affixed to the inner wall

of the cab. At the time of the accident giving rise to this action, Rea's rifle was loaded in violation of RCW 77.16.250 which prohibits the carrying of a loaded rifle in a vehicle.

 Rea informed Savisky, the driver, that he wanted to have his gun available in case they saw an elk. Savisky brought his truck to a complete stop. While the vehicle was stationary, Savisky leaned forward thus enabling Rea to reach behind him. Rea removed the rifle's muzzle from the gun rack and as he did so the weapon discharged. Savisky was hit by a bullet and seriously injured. The trial court found that during the process of removing the weapon from the gun rack the rifle discharged when the trigger activated the firing mechanism. No finding was made concerning what had activated the trigger. The court's oral opinion, however, indicates clearly that it believed the rifle discharged when the trigger brushed against the rear bracket of the gun rack. Since this portion of the oral opinion is supported by substantial evidence and is consistent with the written findings, we may accept it as explanatory of that material fact. *Saddler v. State*, 66 Wn.2d 215, 220, 401 P.2d 848 (1965); *Gay v. Cornwall*, 6 Wn. App. 595, 599, 494 P.2d 1371 (1972); *Stevens v. Stevens*, 4 Wn. App. 79, 480 P.2d 238 (1971).

Savisky sued Rea and Transamerica undertook Rea's defense under the terms of his homeowner's insurance policy. Eventually the matter was settled for an amount within the policy limits. Thereafter, Transamerica filed this action against United seeking reimbursement or indemnity. United was Savisky's automobile liability carrier at the time of the accident. Prior to trial the parties stipulated that if the United automobile policy covered the accident at all, United's coverage would be primary to any coverage by Transamerica.

After a bench trial the court found Savisky had been injured while Rea was in the process of "unloading" his gun from the vehicle. Because such an accident was deemed not

within the coverage of the United policy,[1] Transamerica's claim was denied and a judgment of dismissal was entered in favor of United.

The Court of Appeals reversed the trial court and directed judgment for Transamerica. United appealed as a matter of right from the nonunanimous decision of the Court of Appeals. RAP 13.2(a).

Basically three issues were raised in the Court of Appeals: (1) whether section 3 of the Persons Insured clause of the United policy[2] is applicable, *i.e.,* the "loading–unloading" provision; (2) whether the accident arose out of the "use" of the vehicle as contemplated in the United policy; and (3) whether the United policy violates RCW 46.29-.490(2)(b) and RCW 48.18.130(2).

Concerning the first issue we note the trial court ruled that because Rea's attempt to remove his rifle from the gun rack amounted to "unloading" the truck, coverage was excluded under that portion of the United policy set forth in footnote 1. However, a review of the authorities makes it clear the phrase "loading and unloading", as used in the United policy, has been the subject of serious disagreement among courts that have considered it. There appear to be two main views—the "coming to rest" doctrine and the more liberal "complete operations" theory. The two approaches have been succinctly summarized in *Allstate Ins. Co. v. Valdez,* 190 F. Supp. 893, 894–95 (E.D. Mich. 1961):

> Under the former category [coming to rest], "loading" would cover only the period during which the article has

---

[1] Section 3 of the Persons Insured clause of United's automobile liability policy provides:

"*With respect to the loading and unloading of automobiles, the insurance provided* under 1 and 2 [persons/vehicles insured sections of policy] with respect to others than the named insured and a relative does not apply,

"(a) *to bodily injury sustained by (i) any named insured or relative* (ii) any employee of the named insured, *or* (iii) *any other person, if such injury is caused by other than the named insured . . .*"

[2] See footnote 1.

left its place of rest and is in the process of being carried to or placed in the vehicle. Conversely, "unloading" terminates when the article is no longer being physically lifted from the vehicle but has actually reached a place of rest.

Broader in scope than the "coming to rest" theory, the "complete operation" interpretation covers the entire process involved in the movement of the article, thereby omitting any distinction between "loading" and preparatory activities or "unloading" and "delivery."

(Citations omitted.)

Although the "loading–unloading" controversy was mentioned briefly in *Aetna Ins. Co. v. Kent,* 85 Wn.2d 942, 540 P.2d 1383 (1975) we have adopted neither view. Under the circumstances, we do not need to choose between them in this case. Even considering the view most favorable to United, *i.e.,* the more expansive "complete operations" theory, there is no substantial evidence to support the trial court's findings that the accident occurred "during an unloading process."

■ United contends that because Rea wanted to have his rifle readily available in the event he saw an elk and was attempting to remove the weapon from the gun rack for that purpose he was preparing to unload the rifle from the vehicle. We do not agree. At best it evidenced an attempted repositioning of the rifle in the vehicle for *possible use* if, *at an unknown time in the future,* several other events should occur, *e.g.,* (1) an elk was seen; (2) Rea decided the shot was worthwhile; (3) Savisky decided to stop the vehicle; (4) Rea decided to debark and shoot, or (5) Rea decided to shoot from the stopped or moving vehicle. Under the circumstances there is no evidence to support even an inference that Rea was engaged in the "unloading process" or even "preparing to unload" the vehicle. In this regard the Court of Appeals is affirmed.

■ The second issue is whether the accident arose out of the "use" of the vehicle as contemplated by the United policy. The policy provides, in part, that United will pay on behalf of the insured

all sums which the insured shall become legally obligated to pay as damages . . .

. . .

Arising out of the ownership or *use* of the owned automobile or any non–owned automobile.

(Italics ours.) The term "use" usually is construed to include all proper uses of an automobile. 7 J. Appelman, *Insurance Law and Practice* § 4316, at 142 (1966); 12 G. Couch, *Cyclopedia of Insurance Law* § 45:64, at 153 (2d ed. R. Anderson 1964). In order to arise out of the "use" of the vehicle it is not necessary that the use be the proximate cause of the accident. It is only necessary that there be a *causal connection* between the use and the accident. *State Farm Mut. Auto. Ins. Co. v. Centennial Ins. Co.,* 14 Wn. App. 541, 543 P.2d 645 (1975); 12 *Cyclopedia of Insurance Law, supra* at § 45:56. However, the fact that a vehicle is the mere "situs" of an accident is not sufficient, standing alone, to bring the occurrence within the coverage of a policy such as this. *Handley v. Oakley,* 10 Wn.2d 396, 116 P.2d 833 (1941); *State Farm Mut. Auto. Ins. Co. v. Centennial Ins. Co., supra.*

Consequently, the question is whether the vehicle itself or permanent attachments to the vehicle causally contributed in some way to produce the injury. The cases concerning gunshot wounds received in and around automobiles place particular importance on some physical involvement of the vehicle itself or some permanently attached part thereof. Where such physical involvement was absent, the vehicle has been deemed the mere situs of the accident and thus the accident has been construed to fall outside the coverage of the policy. *Handley v. Oakley, supra; State Farm Mut. Auto. Ins. Co. v. Centennial Ins. Co., supra.* For example, in *State Farm* the gunshot occurred within the vehicle while the passenger attempted to empty the shells from his gun as the vehicle was moving. There is nothing to show that the movement of the vehicle had any causal connection with the gun's discharge; that the gun

touched any part of the vehicle; or that any factor contributed to the discharge other than the passenger's abortive attempt to empty the weapon. Thus, quite properly, the vehicle was deemed no more than the situs of the accident. Other jurisdictions have reached a similar conclusion when the factual pattern of the accident involved no causal connection between the discharge of the gun and a condition of the vehicle itself, some permanent attachment, or some aspect of its operation. *Azar v. Employers Cas. Co.,* 178 Colo. 58, 495 P.2d 554 (1972); *Mason v. Celina Mut. Ins. Co.,* 161 Colo. 442, 423 P.2d 24 (1967); *National Union Fire Ins. Co. v. Bruecks,* 179 Neb. 642, 139 N.W.2d 821 (1966); *Brenner v. Aetna Ins. Co.,* 8 Ariz. App. 272, 445 P.2d 474 (1968).

A different result has been reached where, as here, the factual pattern of the accident involved some causal relationship between a condition of the vehicle, a permanent attachment thereto, or some aspect of its operation. In such event the vehicle has been considered more than the mere situs of the occurrence and liability has attached under an insurance contract providing for coverage of an accident arising out of use of the automobile. *Fidelity & Cas. Co. v. Lott,* 273 F.2d 500 (5th Cir. 1960). (Named insured, attempting to shoot a deer, rested rifle across roof of parked automobile and fired. Bullet, failing to clear curve of the roof, deflected and killed passenger inside. Held causal connection, accident arose out of use of vehicle.) *Laviana v. Shelby Mut. Ins. Co.,* 224 F. Supp. 563 (D. Vt. 1963). (While hunting, passenger about to enter automobile began unloading rifle. Car door swung and struck him, causing gun to discharge injuring owner–driver. Held causal connection, arose out of use of vehicle.) *State Farm Mut. Auto. Ins. Co. v. Partridge,* 10 Cal. 3d 94, 514 P.2d 123, 109 Cal. Rptr. 811 (1973). (Insured driver apparently rested loaded pistol on steering wheel as he drove over rough terrain in pursuit of rabbits. Gun had "hair–trigger" and discharged injuring passenger. Held causal connection, accident arose out of vehicle's use.) *Cagle v. Playland*

*Amusement Inc.,* 202 So. 2d 396 (La. Ct. App. 1967). (Plaintiff locked self out of car. Security guard's gun discharged and injured plaintiff as guard attempted to gain entry by breaking the car's window with the butt of his pistol. Held, causal connection, accident arose out of use of vehicle.) *Accord, Travelers Ins. Co. v. Aetna Cas. & Sur. Co.,* 491 S.W.2d 363 (Tenn. 1973) (loaded shotgun, cause of discharge in vehicle not clear but held to have arisen out of vehicle's use); *Allstate Ins. Co. v. Truck Ins. Exch.,* 63 Wis. 2d 148, 216 N.W.2d 205 (1974) (loaded rifle discharged in car. Cause of discharge not clear but court held that accident arose out of vehicle's use); *see also Viani v. Aetna Ins. Co.,* 95 Idaho 22, 501 P.2d 706 (1972).

As indicated previously, while Rea was in the process of removing the rifle's muzzle from the truck's gun rack the weapon discharged when the trigger brushed against the rear bracket of the gun rack. Consequently, this case falls within the latter class of cases reported above. Liability attaches because there is a causal connection between a use of the vehicle and the accident.

██ United argues that the carrying of a loaded rifle in the truck was contrary to RCW 77.16.250. Orally United argued to this court, and apparently to the Court of Appeals, that the act was illegal and thus was not a foreseeable use of the vehicle. The argument is not well considered for several reasons. First, United proposed such a finding of fact on the issue of foreseeability which the trial court specifically rejected by interlineation. United has assigned no error thereto. We will not consider issues on appeal that are not raised by an assignment of error. *Schneider v. Forcier,* 67 Wn.2d 161, 406 P.2d 935 (1965); *State v. Tanzymore,* 54 Wn.2d 290, 340 P.2d 178 (1959). Second, aside from commenting that no one "envisioned that Mr. Rea would violate the law and . . . handle a loaded rifle while riding as a passenger in the Savisky vehicle" the matter was not developed other than to cite RCW 77.16.250 to support the illegality of carrying loaded rifles

in vehicles. United makes no argument pertaining to the use of an automobile for an unlawful purpose or the performance of an unlawful act during the use of an automobile. Further, United cites no authority. In the absence of argument and citation of authority, we will not consider the issue. *State v. Wood,* 89 Wn.2d 97, 569 P.2d 1148 (1977); *Talps v. Arreola,* 83 Wn.2d 655, 521 P.2d 206 (1974). In this same vein, United has neither asserted nor suggested that if the act is illegal, coverage is thus excluded under some provision of the policy or that coverage under such conditions would violate public policy in the absence of a specific exclusion. Finally, the mere fact that a vehicle may have been used unlawfully or an unlawful event may have occurred during its use, considered alone, does not relieve an insurer from liability if the accident is otherwise covered under the "ownership, maintenance or use" provision of the automobile insurance contract. If the rule was otherwise policy coverage would be invalidated if one ran a stop sign, was guilty of speeding, or operating with defective equipment.[3] In the instant case, the mere fact that Rea's conduct involved a statutory violation is not sufficient, standing alone, to characterize the accident as involving an unforeseeable use of the vehicle.

In the appeal to the Court of Appeals Transamerica argued that section 3 of the policy violates the standard provision requirements of the insurance code. RCW 46.29-.490(2)(b) and RCW 48.18.130(2). Having affirmed the Court of Appeals on other grounds, we need not address the question.

---

[3]A rather graphic example of the problem is found in *Columbia Cas. Co. v. Abel,* 171 F.2d 215 (10th Cir. 1948). In that case a female guest in an automobile was injured in a fall from a moving automobile. At the time, she was attempting to escape possible ravishment by the insured owner–driver. The court held that there was a causal connection between the use of the automobile and the accident. *See also Haser v. Maryland Cas. Co.,* 78 N.D. 893, 53 N.W.2d 508 (1952). (Rape of passenger by employee cab driver. Held driver not covered but case indicates insured cab company would be covered under the "use" provision.)

The Court of Appeals is affirmed. Judgment is reversed and the cause remanded to the trial court with directions to enter judgment in favor of Transamerica.

UTTER, C.J., ROSELLINI, WRIGHT, BRACHTENBACH, HOROWITZ, and DOLLIVER, JJ., and HENRY, J. Pro Tem., concur.