[No. 13629-5-II.   Division Two.   September 24, 1991.]

PEMCO INSURANCE COMPANY, *Appellant*, v. GLORIA SCHLEA, ET AL, *Respondents*.

*Sidney R. Snyder, Jr., Ronald S. Dinning,* and *Merrick, Hofstedt & Lindsey,* for appellant.

*James F. Leggett* and *Leggett & Kram,* for respondents.

PETRICH, J. — In February 1988, Michael Ray Evans abducted Gloria Schlea from her place of employment using an automobile taken from a co-worker. In the course of the abduction, Evans raped Schlea. Schlea's mother had insured her own car with Public Employees Mutual Insurance Company (PEMCO). The policy included household

members of the named insured as insureds under the policy. Schlea made a claim to PEMCO for payment of medical expenses and lost wages under the personal injury protection (PIP) portion of the automobile insurance policy.[1] PEMCO brought a declaratory judgment action to determine its rights and liabilities under the policy. On cross motions for summary judgment, the trial court entered partial summary judgment, ruling that Gloria Schlea's status as an insured by virtue of her status as a member of her mother's household was a question of fact, but that if she was an insured, she was entitled to recover PIP benefits under the PEMCO policy.[2] PEMCO appeals. We reverse.

This court engages in the same inquiry as the trial court on appeal from summary judgment. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). Summary judgment is proper if there are no genuine issues as to any material fact and the moving party is entitled to prevail as a matter of law. *Wilson*, 98 Wn.2d at 437. Here, insurance coverage turns on our interpretation of insurance policy language; thus, we conduct a de novo review because such interpretation is a question of law. *Roller v. Stonewall Ins. Co.*, 115 Wn.2d 679, 682, 801 P.2d 207 (1990). We give the policy the same fair, reasonable, and sensible construction that would be given to the contract by the average person purchasing insurance. *Sears v. Grange Ins. Ass'n*, 111 Wn.2d 636, 638, 762 P.2d 1141 (1988).

Schlea's policy provides that it will extend PIP coverage and pay for medical expenses and loss of income resulting from bodily injury suffered in an "accident". The policy defines "accident" as "an unexpected and unintended occur-

---

[1]Schlea also made a claim under the underinsured motorist coverage portion of the policy. The trial court ruled that she was not entitled to UIM benefits. Schlea appealed that ruling but that appeal has been dismissed on her motion.

[2]The trial court determined that there was no just reason for delay and directed the entry of the judgment in accordance with CR 54(b) and RAP 2.2(d).

rence resulting from ownership, maintenance, or use of a motor vehicle or trailer." PEMCO argues that Schlea should not recover PIP benefits because she did not incur injuries in an "accident" that arose out of the "use" of the vehicle.[3]

We apply the following criteria to determine whether an injury arose out of the "use" of a vehicle for insurance purposes:

> (1) [T]here must be a causal relation or connection between the injury and the use of the insured vehicle; (2) the person asserting coverage must be in a reasonably close geographic proximity to the insured vehicle, although the person need not be actually touching it; (3) the person must be vehicle oriented rather than highway or sidewalk oriented at the time; and (4) the person must also be engaged in a transaction essential to the use of the vehicle at the time.

(Citation omitted.) *Roller v. Stonewall Ins. Co.*, 115 Wn.2d at 687.

Here, only criteria 1 and 4 are reasonably in dispute. Regarding criterion 1, the "connection" between the use and the injury requires that the vehicle or its permanent attachments causally contribute in some way toward the production of the injury. *Transamerica Ins. Group v. United Pac. Ins. Co.*, 92 Wn.2d 21, 26, 593 P.2d 156 (1979).

---

[3]*Roller v. Stonewall Ins. Co.*, 115 Wn.2d 679, 801 P.2d 207 (1990), submitted by PEMCO as additional authority, is not controlling. In *Stonewall*, Daniel Roller made an underinsured motorist claim after Roller's ex-wife deliberately rammed her car into a car occupied by Roller and also ran him down in the street after Roller left the vehicle. The insurance policy only covered injuries caused by an "accident" involving the "use" of an underinsured motor vehicle. The *Stonewall* court found that an intentional act cannot be an accident and, therefore, ruled that there is no UIM coverage of intentional torts committed with a motor vehicle. *Stonewall*, at 683, 686. The court rejected the view that whether an intentional act is an "accident" should be viewed from the perspective of the insured. *Stonewall*, at 685 n.4.

We decline to extend *Stonewall* to hold that Schlea's claim is not covered because an intentional act such as abduction or rape cannot be an "accident" within the meaning of the policy. *Stonewall* involved a claim for UIM benefits rather than PIP benefits. PIP coverage is not dependent upon the fault of any party. The injured party could be totally at fault and coverage would apply. *Stonewall*'s premise, however, is based on the principle that liability insurance does not indemnify against intentional acts and, therefore, uninsured motorist coverage, which provides coverage in absence of liability insurance, also should not so indemnify.

The fact that the vehicle is the "mere 'situs' " of an accident does not bring the occurrence within the coverage of the policy. *Transamerica Ins. Group*, 92 Wn.2d at 26. The injury must result from the type of motoring risk that the parties intended to cover by the automobile policy. *State Farm Mut. Auto. Ins. Co. v. Centennial Ins. Co.*, 14 Wn. App. 541, 543, 543 P.2d 645 (1975), *review denied*, 87 Wn.2d 1003 (1976).

Here, Evans used the vehicle to transport Schlea. However, there is not a sufficient causal connection between this use and Schlea's injuries to invoke coverage because her injuries did not result from the natural and reasonable use of the vehicle. Kidnapping, assault, and rape are not motoring risks against which the parties intended to insure. Further, the vehicle did not contribute toward her assault and rape; it was the mere "situs" of Evans' violent acts. Thus, criterion 1 was not satisfied. *Accord, Edwards v. State Farm Mut. Auto. Ins. Co.*, 399 N.W.2d 95 (Minn. Ct. App. 1986), *review denied* (Minn. Mar. 13, 1987);[4] *Currera v. Loyd*, 531 So. 2d 544 (La. Ct. App. 1988); *see also Spisak v. Nationwide Mut. Ins. Co.*, 329 Pa. Super. 483, 478 A.2d 891 (1984). Criterion 4 was not satisfied because Evans could have accomplished the deeds without an automobile. Thus, the injuries in this case did not arise out of the "use" of the vehicle as contemplated by the parties.

We reverse.

WORSWICK, C.J., concurs.

ALEXANDER, J. (dissenting) — I dissent. I disagree with the majority when it says that Evans did not "use" the vehicle to commit the kidnapping and rape. While using a vehicle as a means of transporting a victim and as a place to commit a rape is not either a "reasonable" or "traditional"

---

[4]The court's discussion in *Edwards* regarding whether an "accident" is determined from the perspective of the victim is dicta because it found that the injuries did not result from the use of a vehicle. *Edwards*, 399 N.W.2d at 99.

use of an automobile, it is, in my judgment, a use nonetheless.

In order for an accident to result from the use of a vehicle, this court need only find that there is a causal connection between the use of a vehicle and the resulting accident. Such a connection exists if the vehicle contributed in any way to produce the injury. *Transamerica Ins. Group v. United Pac. Ins. Co.*, 92 Wn.2d 21, 593 P.2d 156 (1979). If Evans had been in an accident in the same car while he was transporting Schlea to the scene of the rape, would the majority say that this was not an occurrence resulting from the use of a motor vehicle? I think not. To me, there is little difference between that scenario and the present where the vehicle was used to perpetrate these crimes which resulted in injury to Schlea. The simple fact is that Schlea was injured as a result of Evans' use of the automobile to kidnap and rape her.

In concluding that Schlea's injuries did not arise out of the "use" of an automobile, the majority makes the point that Evans could have accomplished his misdeeds without the use of an automobile. It concludes, therefore, that he was not engaged in a transaction essential to the use of the vehicle. Again, I disagree. Plainly, Evans used the vehicle as an essential part of his activity. One could argue that any injury occurring from the use of an automobile could be caused by other means, but that should not prevent us from observing that the injury to Schlea resulted from Evans' use of the automobile. I would affirm the trial court's denial of summary judgment to PEMCO.