[No. 27912-2-I.    Division One.    August 3, 1992.]

MUTUAL OF ENUMCLAW INSURANCE COMPANY, *Appellant,* v.
JOSEPH JEROME, JR., ET AL, *Respondents.*

*Timothy R. Gosselin* and *Burgess Fitzer Leighton & Phillips, P.S.,* for appellant.

*Andrew J. Kinstler* and *Helsell, Fetterman, Martin, Todd & Hokanson,* for respondents.

PEKELIS, J. — The insurer, Mutual of Enumclaw Insurance Company (Mutual of Enumclaw) appeals from the grant of summary judgment in favor of the insureds, Matthew Ederer and Joseph Jerome, Jr. (hereinafter referred to collectively as "the Ederers"). Mutual of Enumclaw contends that the trial court erred in concluding that Ederer's damages were covered under the liability provision of his parents' automobile insurance policy. We affirm.

I

On the evening of June 28, 1989, Matthew Ederer, Joseph Jerome, Jr., and Chris Markey were working at McDonald's restaurant in Kirkland, Washington. They finished their shifts around 8:30 p.m. and left work in a 1987 Acura. The

car was owned by Ederer's parents and insured by Mutual of Enumclaw. Ederer drove the car to another McDonald's restaurant in Juanita, Washington.

After spending about 10 minutes at the McDonald's in Juanita, Ederer and his companions decided to leave and reentered the car. Ederer sat in the driver's seat, Jerome sat in the front passenger seat, and Markey sat in the backseat behind Jerome. As Ederer began to back out of the parking space, Jerome wound together the fuses of two or three "Jumping Jack" fireworks and lit them. Jerome then attempted to throw the lighted firecrackers out of the open front passenger window. However, one or two of the firecrackers dropped inside the vehicle and ignited a bag of fireworks.[1] The fireworks in the bag "went off", causing the vehicle to fill with dense smoke.

Ederer and Jerome attempted to extinguish the burning fireworks. When they were unable to do so, Jerome quickly exited the car. Ederer proceeded to bring the car to a stop and eventually exited.

Ederer later testified that he was in shock when he left the car and did not know at that point whether the car's interior had caught fire or even whether he had been burned. Nevertheless, Ederer remembered that he was worried about the damage to the car because he had previously totaled one of his parents' cars. Thus, after leaving the car, Ederer ran to the front passenger side and attempted to remove the burning fireworks from inside. In the course of doing so, Ederer was severely burned.[2] The car was destroyed by the fire.

Ederer commenced a negligence action against Jerome. As a passenger in the Ederers' car, Jerome qualified as an insured under the liability provision of the Ederers' automobile insurance policy. According to that provision, Mutual of

---

[1] It is unclear from the record whether the bag was located on the floor of the car or in Jerome's lap when it caught fire.

[2] Whether Ederer's burns resulted directly from the fireworks or from a car fire caused by the fireworks is unclear from the record.

Enumclaw was required to pay "all sums the **insured** must legally pay as damages, because of **bodily injury** or **property damage** to which this insurance applies." Jerome tendered the negligence claim to Mutual of Enumclaw so that it would defend against the claim and indemnify Jerome for Ederer's damages. Mutual of Enumclaw accepted Jerome's tender under a full reservation of rights.

The negligence action was placed in mandatory arbitration. The arbitrator found Jerome negligent and also determined that Ederer had been 45 percent contributorily negligent in failing to exercise reasonable care for his own safety. The arbitrator calculated the amount of Ederer's damages at $41,400 and, after reducing that sum by 45 percent, ordered a net award of $22,770. The arbitration award was not appealed by either party, and final judgment was entered.

Meanwhile, Mutual of Enumclaw filed a declaratory action to determine its rights and liabilities under the terms of the policy. Ederer and Mutual of Enumclaw both moved for summary judgment. The trial court granted Ederer's motion and denied Mutual of Enumclaw's motion.

Subsequently, an amended order was entered which reflected the addition of Jerome as a party to the action and which directed Mutual of Enumclaw to pay the arbitration award on behalf of Jerome. It is from this order that Mutual of Enumclaw appeals.

## II

Mutual of Enumclaw contends on appeal that the trial court erred in granting the Ederers' motion for summary judgment and ordering it to pay the arbitration award because Ederer's damages were not covered under the terms of his parents' automobile insurance policy as a matter of law.

█ In reviewing a motion for summary judgment, this court must engage in the same inquiry as the trial court. *Wendle v. Farrow*, 102 Wn.2d 380, 383, 686 P.2d 480 (1984). A summary judgment may not be granted unless there is no genuine issue as to any material fact. *Wendle*, 102 Wn.2d at

383. The facts here are not disputed, and coverage depends solely on the terms of the insurance policy.

■ Where the intention of the parties is clear from the terms of the policy, the courts have nothing to construe and the policy language controls. *Danielson v. Seattle*, 108 Wn.2d 788, 794, 742 P.2d 717 (1987). Where such clarity is lacking and interpretation is necessary, an insurance policy should be given a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance. *Roller v. Stonewall Ins. Co.*, 115 Wn.2d 679, 682, 801 P.2d 207 (1990) (citing *E-Z Loader Boat Trailers, Inc. v. Travelers Indem. Co.*, 106 Wn.2d 901, 907, 726 P.2d 439 (1986)). Moreover, an insurance policy is to be construed in favor of the insured and most strongly against the insurer. *Britton v. Safeco Ins. Co. of Am.*, 104 Wn.2d 518, 528, 707 P.2d 125 (1985).

■■ The interpretation of an insurance policy is a question of law. *State Farm Gen. Ins. Co. v. Emerson*, 102 Wn.2d 477, 480, 687 P.2d 1139 (1984). Thus, this court's review of the trial court's determination regarding insurance coverage is de novo. *Roller*, 115 Wn.2d at 682 (citing *Inland Empire Distrib. Sys., Inc. v. Utilities & Transp. Comm'n*, 112 Wn.2d 278, 282, 770 P.2d 624, 87 A.L.R.4th 627 (1989)).

The liability provision of Ederer's parents' automobile insurance policy provided:

A. [MUTUAL OF ENUMCLAW] WILL PAY.
  1. We will pay all sums the **insured** must legally pay as damages, because of **bodily injury** or **property damage** to which this insurance applies. *Damages must be caused by an **accident** resulting from the ownership, maintenance or use of a covered vehicle.*

(Italics ours.)

Mutual of Enumclaw does not dispute that Jerome is an "insured" under the policy, that he was liable for Ederer's damages, or that Ederer's damages were caused by an "accident". Mutual of Enumclaw contends, however, that the

facts here do not establish that the "accident result[ed] from the . . . use" of the covered vehicle as the terms of the policy dictate. Mutual of Enumclaw's contention depends on the acceptance of its interpretation of the terms "resulting from" and "use".

According to Mutual of Enumclaw, the term "resulting from" should be interpreted as requiring proof that the accident was *proximately caused* by the covered vehicle's use. The Ederers argue, however, that the term should be construed as requiring only a *causal connection* between the accident and the vehicle's use.

This precise question appears never to have been squarely addressed by our courts. Our Supreme Court has stated that the term "resulting *directly* from" is equivalent to the term "proximately caused by". *See, e.g., Villella v. Public Employees Mut. Ins. Co.,* 106 Wn.2d 806, 814-15, 725 P.2d 957 (1986). It has also decided that the term "arising out of" is less restrictive and requires only that there be a causal connection, not proximate causation, between an injury and the use of a covered vehicle. *See, e.g., Transamerica Ins. Group v. United Pac. Ins. Co.,* 92 Wn.2d 21, 26, 593 P.2d 156 (1979).

In support of its contention that the term "resulting from" requires proximate causation, Mutual of Enumclaw relies principally on language in *State Farm Mut. Auto. Ins. Co. v. Centennial Ins. Co.,* 14 Wn. App. 541, 543 P.2d 645 (1975), *review denied,* 87 Wn.2d 1003 (1976). In *State Farm,* the court was called upon to construe the liability provision of an automobile policy obligating Centennial to pay for damages "arising out of the . . . use" of a covered vehicle. 14 Wn. App. at 542-43. In explaining its holding that "arising out of" required only a causal connection, not proximate causation, the court observed that if the drafter of the policy had intended to require proximate causation, "the words 'caused by' or '*resulted from*' would have been used." (Italics ours.) *State Farm,* 14 Wn. App. at 543.

We disagree with Mutual of Enumclaw's contention. First, any significance of the dicta in *State Farm* is vitiated by the fact that the same court recently interpreted a policy containing "resulting from" language as requiring a causal connection. *See Pemco Ins. Co. v. Schlea*, 63 Wn. App. 107, 109-10, 817 P.2d 878 (1991).

█ Furthermore, as the Ederers argue, an average insurance customer has little or no understanding of the legal concept of proximate causation and cannot be expected to suspect that a policy containing the term "resulting from" might provide less coverage than one containing the term "arising out of ". As a matter of both grammar and logic, the term "resulting *directly* from" is narrower than the term "resulting from". We thus conclude that the latter term is closer to the term "arising out of " than "resulting directly from" and hence requires proof only of a causal connection.[3]

Generally, where only a causal connection must be established and the insurance policy contains no express definition of the term "use", the courts have employed a 4-part analysis to decide whether the damages in question arose out of the "use" of the vehicle. *See Sears v. Grange Ins. Ass'n*, 111 Wn.2d 636, 639, 762 P.2d 1141 (1988); *see also Roller v. Stonewall Ins. Co.*, 115 Wn.2d 679, 683 n.1, 687, 801 P.2d 207 (1990).

However, Mutual of Enumclaw contends that the *Sears* test is inapplicable here for several reasons. We agree to the extent that application of the *Sears* test would not resolve the ultimate issue here, which is one of interpretation of the specific language employed in the policy.

The provision at issue provides that "[d]amages must be caused by an accident resulting from the ownership, maintenance or use of a covered vehicle." The policy itself defines

---

[3]We recognize that this court has construed "arising out of " more broadly than "resulting from". *See Toll Bridge Auth. v. Aetna Ins. Co.*, 54 Wn. App. 400, 404-05, 773 P.2d 906 (1989); *Avemco Ins. Co. v. Mock*, 44 Wn. App. 327, 329, 721 P.2d 34 (1986) (citing *State Farm*, 14 Wn. App. at 543). Nevertheless, on a continuum, we place the term "resulting from" closer to the broader term of "arising from" than to the narrower term of "resulting directly from".

the term "accident" as including "continuous and repeated exposure to the same conditions resulting in *bodily injury* or property damage the insured neither expected nor intended." (Italics ours.) Thus, we must decide whether Ederer's injuries were causally connected to the use of the Ederers' vehicle. Resolution of this issue, however, depends on whether *Ederer's* "use" of the vehicle qualifies for coverage or whether the policy language encompasses only *Jerome's* "use".

Mutual of Enumclaw conceded at oral argument that if the policy is interpreted to require a causal connection between Ederer's injuries and his use of the vehicle, then the Ederers must prevail. We agree. Ederer's burns clearly arose from his operation of the vehicle at the time of the accident and from his attempt to save the vehicle from destruction. Our courts have had no difficulty finding a causal connection between the injuries suffered and the use of the insured vehicle on facts far less compelling than those here. *See Rau v. Liberty Mut. Ins. Co.*, 21 Wn. App. 326, 334-35, 585 P.2d 157 (1978) (injuries of driver who was struck by uninsured motorist after leaving vehicle to inquire about directions were causally connected to the use of the insured vehicle).

However, Mutual of Enumclaw claims that under the terms of the policy, the "use" referred to must be *Jerome's* and that Ederer's injuries were not causally connected to Jerome's use.[4] This interpretation of the policy is based on Mutual of Enumclaw's contention that the sentence at issue must be read in context of the preceding sentence which reads, in pertinent part: "[Mutual of Enumclaw] will pay all sums the *insured* must legally pay as damages". (Italics ours.) Mutual of Enumclaw argues that the term "use" in

---

[4] The Ederers assert that they can prevail even if Jerome's use of the vehicle were the only use covered. They contend that Jerome's passive use of the Ederers' vehicle is a sufficient basis for coverage. We need not reach the Ederers' contention here, but note that it is debatable under Washington case law. *Compare Sears*, 111 Wn.2d at 641 (term "using" in insurance policy includes passive use by a passenger") *with Transamerica*, 92 Wn.2d at 26 (term "use" in insurance policy generally construed to include all *proper* uses of an automobile (citing 7 J. Appleman, *Insurance* § 4316, at 142 (1966); 12 R. Anderson, *Couch on Insurance* § 45:64, at 153 (2d ed. 1964))).

the second sentence must be read together with the term "insured" in the previous sentence. According to Mutual of Enumclaw, it is the *insured tortfeasor's* "use" of the vehicle which must be causally connected to the accident.

Mutual of Enumclaw provides no authority in support of its argument, nor have we found any cases directly on point. However, a review of cases involving similar policy language demonstrates that courts have focused on the extent of the physical involvement of the *vehicle* rather than the use by a particular person.

For example, in *Transamerica*, in determining whether a truck passenger's accidental discharge of a loaded rifle was covered under the driver's automobile insurance policy, our Supreme Court focused exclusively on the *vehicle's* involvement in the accident, not on a particular person's "use" of the vehicle. 92 Wn.2d at 26-27. The court stated:

> Consequently, the question is whether the vehicle itself or permanent attachments to the vehicle causally contributed in some way to produce the injury . . . Where such physical involvement was absent, the vehicle has been deemed the mere situs of the accident and thus the accident has been construed to fall outside the coverage of the policy. . . .

(Citations omitted.) *Transamerica*, 92 Wn.2d at 26-27. *Accord, Detweiler v. J.C. Penney Cas. Ins. Co.*, 110 Wn.2d 99, 109, 751 P.2d 282 (1988) (claimant's injury arose out of truck driver's "use" where truck causally contributed to claimant's injuries). Similarly, in *State Farm*, a case cited by Mutual of Enumclaw, the court held that:

> before an injury arises out of the use of a vehicle, the *vehicle* must contribute in some fashion toward producing the injury; the vehicle must be more than the coincidental place in which the injury occurred.

(Italics ours.) 14 Wn. App. at 543.

In another context, the Tenth Circuit of the United States Court of Appeals focused on the vehicle's involvement and found coverage for a female passenger who jumped out of the vehicle to escape a possible attack by the insured tortfeasor. *Columbia Cas. Co. v. Abel*, 171 F.2d 215, 218 (10th

Cir. 1948). The court found that the accident arose out of the "use" of the vehicle. *Abel,* 171 F.2d at 218.

Moreover, we are unable to discern any sound grammatical or policy reason to support Mutual of Enumclaw's argument. The policy language drafted by Mutual of Enumclaw simply does not put an ordinary insurance purchaser on notice that the term "insured" in the first sentence was intended to modify the term "use" in the following sentence. It is not a question of reading the two sentences together, as Mutual of Enumclaw suggests. Even "read together", the two sentences simply do not compel the interpretation urged by Mutual of Enumclaw.

■ ■ Mutual of Enumclaw offers several hypotheticals which it contends demonstrate that it could not have intended such broad coverage. At best, however, the hypotheticals merely give rise to an inference that Mutual of Enumclaw may have subjectively intended to provide less coverage than the plain language of the policy grants. Mutual of Enumclaw's subjective intentions are irrelevant. The insureds had the right to rely on the ordinary meaning of the policy terms. It is undisputed that both Ederer and Jerome are insureds under the policy. If Mutual of Enumclaw wished to limit coverage to only those injuries caused by the insured *tortfeasor's* use of the vehicle, then, as drafter of the policy, it could have so provided.[5] This court should not read terms into an insurance policy, especially where, as here, doing so would benefit the insurer. *See Britton,* 104 Wn.2d at 528.

In summary, under the terms of the policy here, Mutual of Enumclaw was required to pay all sums the insured, Jerome, was legally required to pay as damages because of

---

[5] In *Detweiler,* for example, the insurer successfully accomplished this result. There, the UM coverage clause read as follows:

> We will pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by a covered person and *caused by an accident. The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the uninsured motor vehicle.*

(Some italics ours.) *Detweiler,* 110 Wn.2d at 103.

Ederer's bodily injuries. Jerome's legal liability was established at arbitration. The policy defines covered damages as those "caused by an accident resulting from the . . . use of a covered vehicle." As defined in the policy, the term "accident" includes Ederer's bodily injuries. Further, Ederer's injuries were causally connected to "the . . . use" of the insured vehicle, *i.e.*, Ederer's use both in operating the vehicle at the time of the accident and in reentering the vehicle in an attempt to remove the burning fireworks. Mutual of Enumclaw's policy in no way limited its coverage to only those injuries causally connected to the insured *tortfeasor's* use of the vehicle. Had it wished to do so, it could have so provided in the policy.

### III

The Ederers seek an award of attorney fees on appeal. Our Supreme Court has recently held that an insured may recover attorney fees in an action involving an insurer's refusal to defend an action or pay a claim. *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 52-53, 811 P.2d 673 (1991). However, Mutual of Enumclaw argues, without any citation to authority, that the Ederers waived their right to claim attorney fees because the request was made for the first time on appeal. This argument is without merit. *See* RAP 18.1(a) (party which is entitled under applicable law to recover attorney fees on appeal may do so if the party complies with RAP 18.1).

Mutual of Enumclaw also contends that the amount of the Ederers' award should be limited to those fees incurred specifically on behalf of Jerome because he, and not Ederer, is the "insured" for purposes of this action. We disagree. Both Jerome and Ederer are "insureds" under the policy at issue here. Furthermore, it is Jerome's liability for which we hold Mutual of Enumclaw responsible herein. Hence, all the fees incurred benefited Jerome. Accordingly, we award the Ederers their fees.

Affirmed.

AGID, J., concurs.

COLEMAN, J. (dissenting) — The dispositive issue in this case is whether Mutual of Enumclaw (MOE) must pay damages on behalf of Joseph Jerome, an insured passenger under the Ederer family car insurance policy, to Matthew Ederer, an insured driver under the same policy. The resolution of that issue depends upon the interpretation of the following policy language:

[MOE] will pay all sums the **insured** must legally pay as damages, because of **bodily injury** or **property damage** to which this insurance applies. Damages must be caused by an **accident** resulting from the ownership, maintenance or use of a covered vehicle.

In holding that MOE must pay Ederer all sums for which Jerome is legally liable, the majority essentially concludes that once the legal liability of a passenger-tortfeasor is determined, insurance coverage automatically follows so long as the policy provided coverage for passengers. The majority further concludes that Ederer's use of the covered car — not Jerome's use — is what triggers MOE's obligation to Jerome under the policy, notwithstanding the fact that Ederer's use of the car had nothing to do with the cause of the accident.

I respectfully disagree. Ederer's use of the car is irrelevant inasmuch as there is no issue as to his liability. MOE filed a declaratory judgment action to determine what obligation, if any, it owed Jerome. Hence Jerome is the true beneficiary under the policy and, contrary to the majority's view, it is Jerome's use of the car that consequently determines MOE's obligation to pay Ederer the damages on behalf of Jerome. In analyzing the policy language at issue, the majority overlooks the duplicate use of the word "damages" in the first and second sentences. To make sense,

and to give each part of the policy language force and effect (*see Boeing Co. v. Aetna Cas. & Sur.*, 113 Wn.2d 869, 876, 784 P.2d 507 (1990)), the word "damages" in the second sentence must refer to those damages that the insured must legally pay. Such damages are those caused by the *insured*'s use of the covered vehicle. Here, the insured at issue is Jerome.

Because the majority focuses primarily upon Ederer's use of the car at the time of the accident, it never reaches the issue of whether Jerome's use was the type that the parties intended to cover under the policy. However, when the issue is couched in terms of Jerome's use, it becomes clear that the policy does not obligate MOE to pay Ederer the damages arising from Jerome's use of the car. As discussed in *PEMCO Ins. Co. v. Schlea*, 63 Wn. App. 107, 817 P.2d 878 (1991), in order to find that a connection exists between the use of a covered vehicle and an injury, "the vehicle or its permanent attachments [must] causally contribute in some way toward the production of the injury." *Pemco*, at 110. Further, insurance coverage under terms such as those in the present case does not extend to situations in which the covered vehicle was the mere situs of an accident that led to damages. *See Transamerica Ins. Group v. United Pac. Ins. Co.*, 92 Wn.2d 21, 26, 593 P.2d 160 (1979).

Here, neither the car nor any attachments in the car had anything to do with Ederer's injuries. The car was merely the situs of the accident that resulted from Jerome's improvident act of lighting firecrackers and accidentally dropping one in the car. Such conduct can hardly be construed as the sort of "motoring risk" that the parties intended to insure against under the policy. *See State Farm Mut. Auto. Ins. Co. v. Centennial Ins. Co.*, 14 Wn. App. 541, 543, 543 P.2d 645 (1975) (the intentions of the parties to an insurance contract control the extent of coverage), *review denied*, 87 Wn.2d 1003 (1976).

Looking at the situation from a different perspective clarifies this point. If, while riding in a car other than Ederer's,

Jerome threw a lit firecracker that accidentally landed in Ederer's car and caused him damages, Jerome would clearly be liable to Ederer, just as he unquestionably is in the present case. However, no one would seriously contend that Jerome's conduct, despite its accidental nature, was the type of use of an insured vehicle that an insurance company would expect to cover under a clause like the one at issue here. *See Richland Knox Mut. Ins. Co. v. Kallen,* 376 F.2d 360, 364-65 (6th Cir. 1967) (the lighting of a firecracker in a car does not involve the use of that car).

The flaw in the majority's analysis is that it fails to recognize that the portion of the insurance contract at issue here is a liability provision, not a provision for personal injury protection. Jerome is not entitled to have MOE pay the damages he owes Ederer simply because the policy is the Ederer family policy and a member of the Ederer family was injured. Rather, as discussed above, Jerome's coverage depends upon whether his use was a covered use that resulted in the accident that caused damages to Ederer. It was not.

The fact that the injured party in this case, Ederer, was also an insured under the policy, presents an odd situation. That oddity, however, does not alter the fundamental principles of liability coverage. Typically, a car owner purchases liability coverage for specified drivers of the car. Such coverage protects the owner from being held liable for the actions of a driver (including the owner) who injures another party. Similarly, liability coverage may be purchased to shield the car owner from liability to others for damages caused by the tortious act of a passenger in the covered car. As an insured, the passenger-tortfeasor is typically provided coverage as well.

However, passenger liability provisions are not limitless. Uses of the car to be covered under such provisions must be the type that the parties intended to insure. Use of a covered car for the purpose of lighting firecrackers is not such a use and, therefore, will not protect an insured passenger-tortfeasor from any resultant liability.

In sum, I would hold that Jerome's use of the car is determinative of MOE's obligation to Jerome under the policy and, further, that Jerome's use was not the type that the parties intended to cover under the liability provision of the Ederers' policy. Consequently, MOE should not be forced to pay Ederer his damages on behalf of Jerome. I would reverse the trial court and order that summary judgment be entered in favor of MOE.

Review granted at 120 Wn.2d 1018 (1993).