[No. 59738-3.    En Banc.    August 26, 1993.]

MUTUAL OF ENUMCLAW INSURANCE COMPANY, *Petitioner*, v. JOSEPH JEROME, JR., ET AL, *Respondents*.

*Reed McClure,* by ·*William R. Hickman* and *Pamela A. Okano,* for petitioner.

*Helsell, Fetterman, Martin, Todd & Hokanson,* by *Andrew J. Kinstler* and *Polly K. Becker,* for respondents.

DOLLIVER, J. — On June 28, 1989, after finishing work at a McDonald's in Totem Lake, Matthew Ederer agreed to

give Joseph Jerome, Jr., and Chris Markey a ride home. Ederer had permission to drive and carry passengers in his parents' 1987 Acura, which was insured by Mutual of Enumclaw Insurance Company (MOE). On the way home, Ederer stopped briefly at another McDonald's in Juanita. At that time, Jerome was in the front passenger seat and Markey was in the back seat. As Ederer began backing out of the parking place, Jerome lit two or three firecrackers, known as "Jumping Jacks", by twisting the fuses together. Jerome attempted to throw the Jumping Jacks out the window, but one or two dropped inside the car and ignited a bag containing additional firecrackers. The firecrackers began to explode filling the interior with smoke and flames. When asked at his deposition how the Jumping Jacks fell inside the car, Jerome answered, "I don't know. Just happened so fast. I know I had the window down. . . ." Clerk's Papers, at 61-62.

Jerome and Markey were able to leave the car without injury. Ederer, however, sustained burns to his legs, chest, back, arms, and hands. Ederer's exposure was prolonged because his ability to safely stop and exit the Acura was hampered by the visual impairment caused by the smoke. In addition, after exiting the Acura, Ederer sustained further injury by attempting to remove the firecrackers from the floor on the front passenger side.

Ederer sued Jerome alleging he was negligent in igniting and handling the fireworks. Jerome tendered his defense to MOE which defended the action with a full reservation of rights. The case was placed in mandatory arbitration. The arbitrator assessed Ederer's damages at $41,400 but reduced the award by 45 percent to $22,770 to reflect Ederer's contributory negligence. Neither party appealed, and the judgment became final.

MOE sought a declaratory judgment as to its obligation to defend or indemnify Jerome for the judgment entered against him. Both MOE and the respondents, Jerome and Ederer, moved for summary judgment. The trial court granted the respondents' motion and MOE appealed to Division One of

the Court of Appeals which affirmed the trial court in a 2-to-1 decision. *Mutual of Enumclaw Ins. Co. v. Jerome*, 66 Wn. App. 756, 761, 833 P.2d 429 (1992).

MOE does not dispute Jerome was an insured under the policy or that Ederer's damages were caused by an accident. MOE argues Ederer's injuries were not caused by an accident resulting from the use of the vehicle as required under the liability portion of the policy, which provides:

> **We** will pay all sums the **insured** must legally pay as damages, because of **bodily injury** or **property damage** to which this insurance applies. Damages must be caused by an **accident** resulting from the ownership, maintenance or use of a covered vehicle.

Clerk's Papers, at 104.

The Court of Appeals' majority concluded the term "accident" included "bodily injury" and held Ederer's injuries resulted from his use of the Acura "both in operating the vehicle at the time of the accident and in reentering the vehicle in an attempt to remove the burning fireworks." *Jerome*, 66 Wn. App. at 766. The dissent disagreed with the majority's definition of "accident" and its conclusion that Ederer's use of the Acura triggered MOE's obligation to Jerome. *See Jerome*, 66 Wn. App. at 767 (Coleman, J., dissenting).

On appeal from an order of summary judgment, this court engages in the same inquiry as the trial court. *Commodore v. University Mechanical Contractors, Inc.*, 120 Wn.2d 120, 123, 839 P.2d 314 (1992). Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Commodore*, 120 Wn.2d at 123. We review de novo the interpretation of an insurance contract. *See Rones v. Safeco Ins. Co. of Am.*, 119 Wn.2d 650, 835 P.2d 1036 (1992). Policies are "given a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance." *Sears v. Grange Ins. Ass'n*, 111 Wn.2d 636, 638, 762 P.2d 1141 (1988). Undefined terms must be given their " 'plain, ordinary, and popular' " mean-

ings. *Boeing Co. v. Aetna Cas. & Sur. Co.*, 113 Wn.2d 869, 877, 784 P.2d 507, 87 A.L.R.4th 405 (1990) (quoting *Farmers Ins. Co. v. Miller*, 87 Wn.2d 70, 73, 549 P.2d 9 (1976)). Ambiguities are resolved in favor of the insured. *See Rones v. Safeco Ins. Co. of Am.*, *supra*.

The issue in this case is whether the accident causing Ederer's damages resulted from the use of the Acura. Initially, the parties disagree whether the term "accident" encompasses Ederer's "bodily injury" or refers to Jerome's act of dropping the fireworks. The MOE policy provides:

> Accident includes continuous and repeated exposure to the same conditions resulting in bodily injury or property damage the insured neither expected nor intended.

(Emphasis deleted.) Clerk's Papers, at 103. This policy definition is not definitive. *Cf. United Pac. Ins. Co. v. Van's Westlake Union, Inc.*, 34 Wn. App. 708, 713, 664 P.2d 1262 (similar language meant to clarify that "accident" is not limited to sudden events), *review denied*, 100 Wn.2d 1018 (1983). Generally, in the insurance context, "accident" is defined as "an unusual, unexpected and unforeseen happening". *Roller v. Stonewall Ins. Co.*, 115 Wn.2d 679, 684, 801 P.2d 207 (1990). Equating "accident" with "bodily injury", as did the Court of Appeals, eliminates the requirement that an event or condition, either of a sudden or continuous nature, must occur to trigger coverage.

Given the clear language in the liability provision that "[d]amages must be caused by an **accident** resulting from the . . . use of a covered vehicle", we find the Court of Appeals' interpretation is not "a fair, reasonable, and sensible construction" the average insurance consumer would give to this contract. *Cf. E-Z Loader Boat Trailers, Inc. v. Travelers Indem. Co.*, 106 Wn.2d 901, 906, 726 P.2d 439 (1986) (distinguishing bodily injury from the accident causing such bodily injury).

Our conclusion is not altered by respondents' citations to *Dillard v. Public Employees' Retirement Sys.*, 93 Wn.2d 677,

611 P.2d 1231 (1980) and *Viking Automatic Sprinkler Co. v. Pacific Indem. Co.*, 19 Wn.2d 294, 142 P.2d 394 (1943). Neither case supports respondents' broad contention that "accident" includes "the entire sequence of causally linked events[, including bodily injury,] which culminates in damages."

The relevant inquiry is whether Jerome's dropping of the fireworks resulted from the use of the Acura. We will treat the phrase "resulting from" as equivalent to "arising out of" in resolving this issue because MOE did not challenge the Court of Appeals' ruling on this point. RAP 13.7(b). *See Jerome*, 66 Wn. App. at 761-62.

■ In Washington, an accident "arises out of" the use of a vehicle if "the vehicle itself or permanent attachments to the vehicle causally contributed in some way to produce the injury." *Transamerica Ins. Group v. United Pac. Ins. Co.*, 92 Wn.2d 21, 26, 593 P.2d 156 (1979). *See McDonald Indus., Inc. v. Rollins Leasing Corp.*, 95 Wn.2d 909, 631 P.2d 947 (1981). *See also Fiscus Motor Freight, Inc. v. Universal Sec. Ins. Co.*, 53 Wn. App. 777, 770 P.2d 679, *review denied*, 113 Wn.2d 1003 (1989). *See generally* 7 Am. Jur. 2d *Automobile Insurance* § 194, at 703 (1980 & Supp. 1993).

For example, in *McDonald*, an 11-ton steel counterweight was loaded onto a rented tractor (the portion of a tractor-trailer combination which includes the engine and driver's compartment). The weight was negligently secured and, while the tractor-trailer combination was driven at 40 m.p.h. through an "S" curve, the counterweight slid off causing an accident with two following vehicles. The court held the damages were covered under the liability policy on the tractor, stating:

> Without the motive power of the insured tractor the trailer would not have been able to negotiate the "S" curve on the highway at 40 m.p.h. The tractor was more than a mere coincidental place in which the injury occurred. Without question its use "contributed in some way to produce the injury".

*McDonald*, 95 Wn.2d at 912 (quoting *Transamerica*, 92 Wn.2d at 26).

In *Transamerica*, two men were on a hunting trip and both had their rifles on a gun rack at the back of the truck cab. The passenger asked the driver to stop the truck so he could have his rifle available in the event he saw an elk. As the passenger removed the rifle's muzzle from the rack, the rifle discharged and injured the driver. The trial court found coverage because the trigger had been activated when it brushed against the rear bracket of the gun rack, a permanent attachment to the vehicle.

The fact that a vehicle is the mere situs of an accident, however, is not sufficient to establish the required causal connection. *See Handley v. Oakley*, 10 Wn.2d 396, 116 P.2d 833 (1941); *State Farm Mut. Auto. Ins. Co. v. Centennial Ins. Co.*, 14 Wn. App. 541, 543 P.2d 645 (1975), *review denied*, 87 Wn.2d 1003 (1976).

In *Handley*, an ice cream truck was dispensing ice cream on the third-base sideline at a baseball game. A boy was injured by a foul ball as he waited in line for ice cream. The court held the accident did not arise from the use of the truck, but rather from the baseball game. "[T]he truck was but a place, and not the instrument. The accident would have happened had the ice cream been stored in or dispensed from any sort of a vehicle or place." *Handley*, 10 Wn.2d at 403.

In *Centennial*, two men were returning home from a hunting trip. The passenger remembered he had not unloaded his rifle before entering the vehicle. While the vehicle was in motion, the passenger attempted to eject the three remaining shells. The first two shells cleared the chamber, but the third shell misfired, injuring the driver. The court held there was no coverage because the unloading of a weapon in a moving vehicle was not a "natural and reasonable incident or consequence" of using a vehicle on a hunting trip. *Centennial*, 14 Wn. App. at 544.

In this case, we find the accident was not causally connected to either Ederer's or Jerome's use of the Acura. The respondents argue Ederer's use is causally connected to the

accident because the arbitrator found he was 45 percent contributorily negligent. The arbitrator ruled Ederer's failure to exercise reasonable care for his safety was a "direct and proximate cause of his injuries." Clerk's Papers, at 187. We do not find Ederer's failure to exercise reasonable care to be causally connected to the accident. If Jerome had been successful in throwing all the "Jumping Jacks" out the window, Ederer's lack of care would be irrelevant. Further, we are not convinced Ederer's lack of care can be properly characterized as a "use" of the Acura.

The accident also is not causally connected to Jerome's use of the Acura. Jerome lit the firecrackers and threw them out the window. He testified the window was rolled down. There is no evidence any part of the Acura or permanent attachments thereto came in contact with Jerome's hand, arm, or shoulder during the throwing motion which could have contributed to the dropping of the firecrackers.

In sum, there is no evidence in the record which links the Acura or any of its permanent attachments to the accident. Therefore, we hold the accident did not result from the use of the Acura as required under the MOE policy.

Our decision is in accord with courts from other jurisdictions which consistently have held accidents involving the throwing of firecrackers from stationary or moving vehicles do not "arise out of" the use of those vehicles. *See Farm Bur. Mut. Ins. Co. v. Evans*, 7 Kan. App. 2d 60, 637 P.2d 491 (1982); *Speziale v. Kohnke*, 194 So. 2d 485 (La. Ct. App.), *writ refused*, 250 La. 469 (1967); *Richland Knox Mut. Ins. Co. v. Kallen*, 376 F.2d 360 (6th Cir. 1967); *Wirth v. Maryland Cas. Co.*, 368 F. Supp. 789 (W.D. Ky. 1973), *aff'd*, 497 F.2d 925 (6th Cir. 1974). *See generally* Annot., *Automobile Liability Insurance: What Are Accidents or Injuries "Arising Out of Ownership, Maintenance, or Use" of Insured Vehicle*, 15 A.L.R.4th 10 (1982 & Supp. 1992). *But see Frazier v. Unsatisfied Claim & Judgment Fund Bd.*, 262 Md. 115, 277 A.2d 57 (1971).

We reverse the Court of Appeals affirmance of the trial court's grant of summary judgment in favor of the respon-

dents and grant summary judgment in favor of MOE. We also reverse the award of attorney fees to the respondents.

ANDERSEN, C.J., and UTTER, BRACHTENBACH, DURHAM, SMITH, GUY, JOHNSON, and MADSEN, JJ., concur.